Mr Chief Justice Marshall
 

 delivered 'the opinion of the Court.
 

 This is an appeal from a decree pronounced in the court of the United States for,' the district of Kentucky, directing the appellants to release and convey to the appellees, all the right and title which they hold, jointly or severally, in the tracts of land in the bill mentioned, with special warranty' against themselves.
 

 The bill filed in January 1824, by Sarah Carrington, widow and devisee of George Carrington deceased, claims from the defendants as purchasers from John R. Williams, heir at law of John Williams deceased, who is not an inhabitant of Kentucky, and therefore not a party to the suit,, all the military lands of, the said John Williams lying in the district of Kentucky, amounting to four thousand acres, which land was sold, as is alleged, by John Williams in his life time to George Car-rington, the testator of the plaintiff in the circuit court. This claim is founded on a decree pronounced by the county courfof Halifax, in the state of Virginia, sitting in chancery in-November 1817, on. a bill filed in November 1S15, by the said Sarah Carrington against the said John R. Williams, and on a deed of conveyance made, on the 18th day of March 1820, by the said John R. Williams to the said Sarah Carrington, in pursuance thereof. This decree was affirmed on appeal. The bill also refers to a suit brought by George Carrington,'in his life- time against the guardians of the' said John R. Williams while an infant, in which a. decree was obtained, directing the guardian of the said John R. Williams to convey and assign the entries and surveys of the said military lauds to the said George-Carrington. The plaintiff,prays that these decrees, with the proceedings on which they were founded, and the conveyances made in' pursuance of them, should be taken as a ■paw-of his bill.
 

 .The bill filed in the county court of Halifax, in November lSf5',- charges that George Carrington in his life time exchanged certain lands lying.'in the said county with John
 
 *99
 
 ■ Williams deceased, for a military claim of four thousand acres to which the 'said Williams was entitled. That the said George, by the direction of the said Williams, caused his land in Halifax to be.-conveyed to a certain John Camp who was put in possession thereof; but the patents for the military lands not having been issued, no conveyance was made of the legal title to them. Some time after the death of the said Williams the said Carrington instituted a suit in the court of Halifax, against John Robert Williams, then an infant, the only child of the said John Williams, to obtain an assignment of the entries and surveys for the said four thousand acres of military land. As the bill filed in that suit contains a full statement of the contract with a description of the land it claims, the plaintiff" prays that it may be taken as a part of the present bill as fully as if literally inserted.
 

 On the 23d of May 1803, a decree was pronounced in the said suit, which, among other things, directed a certain John B. Scott, the then guardian of the said John R. Williams, let assign the entries and surveys of the said military lands to the said George Carrington, so as to enable him to obtain patents . therefor in his own name; and did further order that the said John R. Williams should, on attaining his age of twenty-one years, release all his right to the said George Carrington. The plaintiff prays that this decree and all the proceedings in the suit may be taken as a part of his bill.- The assignments directed by the decree wore made by the said John B. Scott, but
 
 George
 
 Carrington departed this iife soon afterwards, not having obtained the patents. By his last will he devised these lands to the plaintiff", who has applied for patents, but is informed at the land office, that, the assignment of (he said Scott does not authorize the register of the land
 
 office in
 
 Kentucky to issue them. The said John R. Williams having attained his full age, not only refuses to release his' claim and to assign the said entries and surveys, but has gone to Kentucky with a view of selling the said lands. The bill prays for an assignment of the entries and surveys, and a release of the right of the said John R. Williams, and that he may be enjoined from performing' any act which may disable him from making a complete title to the plaintiff".
 

 The defendant in his answer denies the contract, and adds,
 
 *100
 
 that if such a contract did exist, it was verbal, that no note or ' memorandum thereof was signed by either'of the parties, and that it is void by the statute of frauds which he pleads.
 

 A géneral,replication was filed and depositions were, taken, after which the following entry was made. “And now at this day, to wit, at a court holden .for the said county at the court house thereof, on the 27th day of October 1817, came the parties by their counsel, by whose consent this cause was this day heard upon the bill, answer, examinations of witnesses,
 
 the bill, answer, examinations of witnesses
 
 in a cause formerly depending in this court between George Carrington, plaintiff, and the defendant, by his guardian,' defendant, and was argued by counsel-; on consideration whereof, it is decreed and ordered, that the defendant do forthwith assign to the plaintiff in a proper and legal manner, the surveys and other title papers in the original bill mentioned. Thé defendant having appealed from this decree, it was affirmed at a superior court of chancery held at the town of Lynchburg, on the 19th day of May ISIS.”
 

 In pursuance of these decrees, the said John R. Williams did, on the 18lh day of March, in the year 1820, by his indenture of that date, convey to the plaintiff, the military lands in the bill mentioned, consisting of one tract of five hundred acres, lying on Beaver creek; also of one other tract of three hundred and. fifty acres, likewise lying on Beaver creek ; also of one other fract of one thousand acres, lying on Russel’s creek; also of one other tract of one hundred and fifty acres, lying on the first creek emptying into Little Barren ; also of one other tract, of one thousand acres, lying in the county of being the tract of land entered by John Williams on the 2d of August 1784-; and also of one other tract of land containing one thousand acres lying in the county of entered on .the 10th of August 1784.
 

 The bill filed in this cause farther charges, that Samuel Brents, William Caldwell and Isaac Caldwell, citizens of the state of Kentucky, with full knowledge of the plaintiff’s claims, entered into a contract, on or about the 6 th day of January 1818, with the said John R. Williams, for the purchase of the two tracts of ■ one thousand acres each, lying south of the Tennessee, for which entries had been made.by the said'John Williams in his life time on the 2d and 10th of August 1784; and that the said William
 
 *101
 
 Caldwell on the 30th of August
 
 1815,
 
 with full knowledge of the right of the plaintiff, entered into a contract with the said John R: Williams, for the purchase of the tractof one thousand acres, near the town of Columbia, in the county of Adair ; and that the said Samuel Brents also, with the full knowledge of the plaintiff’s title, hath entered into a contract with the said John R. Williams for the said tracts, containing five hundred acres,, and three hundred and fifty acres, lying on Beaver creek, in the county of and for the tract containing one hundred and fifty acres lying on the first creek emptying into the Little Barren, in the county of Under these contracts and other papers obtained from the said John R. Williams, the said Samuel Brents, William Caldwell and Isaac Caldwell, who are made defendants, have obtained legal titles to-the said military surveys, and have also obtained assignments or transfers of the entries for two tracts, of one thousand acres each, lying south of the Tennessee, for which they will obtain patents, unless restrained by order of this court. *
 

 The bill prays that the defendants may be decreed to cpnvey to the plaintiff, and for geheral. relief.
 

 ■ The defendants filed separate answers,'each denying the contract, insisting that if any contract existed, it was by parol and consequently void by the statute of frauds ; and claiming to be purchasers without notice of any equity in the plaintiff.
 

 The several defences are now to be examined.
 

 The proceedings in .the county court of Halifax, in the suit brought in 1815, arc perfectly regular.; aitd, according, to the constitution and laws of the United States and the decisions of this court, are allowed the same full faith and credit in the courts of Kentucky, that they would receive in Virginia. If the decree pronounced by the court of Halifax in 1S17, and afterwards affirmed in the superior court of chancery at Lynch-burg, would1 have been enforced in Virginia; pr if, had it been pronounced in Kentucky, it would have been enforced in Kentucky, then the decree for enforcing it which was pronounced by the court of the United States sitting in Kentucky is correct.
 

 The first point to be considered is the contract itself. It is not in writing, and consequently admits only of parol evidence.
 

 Paul Carrington, the father of. George, deposes that he owned a tract of land in the county of Halifax, called Dry Branch,
 
 *102
 
 containingfive hundred and ninety-sixacresj the whole of which, at the close of the revolutionary war, he gave to his son George, put him in possession, delivered the title papers, and directed him to prepare a deed. In 1787 or 1788, George requested the deponent- to convey the land to John Williams, to vyhom he had sold it, in exchange for his military lands in Kentucky. Some little time afterwards, George requested the witness (o convey the land to George Camp, to whom Williams had sold it. He conveyed to Camp. Some short time afterwards Williams and George Carrjngton were both at the house of the deponent, .when Williams stated that he had purchased the land from George Carrington and sdld it to Camp for 400 pounds. He has also frequently heard George Camp say that he purchased the land from Williams for 400 pounds. Has never heard Williams say he gave his military lands, for the Dry. Branch, tract.
 

 Clement Carrington has paid the taxes on the .Kentucky military lands, on account of the estate of George Carrington, ever since they were taxed.
 

 Nathaniel' Terry was acquainted with the Dry Creek trad, and has heard Williams say he had given his western lands for it. He supposed Williams to have been in possession of (lie Dry Branch tract, but he never worked hands on it. Carring-ton did not work it after the sale to Williams, farther than to finish his crop.
 

 James Eastham has frequently heard colonel John Williams say, that he had given his lands in the western country to George Carrington, in exchange for the Dry Branch tract, which he afterwards sold to Geoi'ge Camp.
 

 William Yancy has heard John Williams say,.that he purchased the Dry Branch tract fiom George Camp, and had given •his claims to land in the western country in payment for it. He has been frequently in company with the said Joljn Williams, when this trade was the subject, of conversation,,aiid Williams always gave the same account of it. Williams sold the Dry Branch tract to George Camp.
 

 Thomas Roberts well recollects to have heard John Williams say, that he liad exchanged his Kentucky lands with Geoi’ge Carrington for his Dry Branch tract.
 

 The depositions of William Yañcy and Thomas Roberts were taken in the. suit brought against the guardian of. John R. Wil-
 
 *103
 
 liaras; but as they were filed with the bill of 1815, and read by consent át the hearing, they are supposed to forra a part of the record in this cause.
 

 No counter testimony was offered.
 

 We think the exchange by John Williams of his military land for the Dry Branch tract is fully established, and proceed to inquire into the validity of the contract.
 

 The statute of frauds, of which the defendants claimed the benefit, avoids parol contracts for land, and will unquestionably ■ avoid that between John Williams and George Carrington, unless the transactions between'the parties take the. case -out of the statute. The appellees maintain the affirmative of this proposition, and contend that .the complete execution of the contract on the part of George Carrington, by conveying the Dry Branch tract, to the vendee of John Williams, supplies in law the want of a memorandum in writing. For a considerable length of time this principle appeared to be firmly settled in the court of chancery.in England. Maddock, in his Treatise oh Chancery, vol. 1, p. 301, says, “if therefore it be clearly shbwn what the agreement was, and that it has been partly performed, that is, that an act has been .done, not a mere voluntary act, or merely introductory or ancillary to the agreement, but a part execution of the substance of the agreement, and which would not have been done unless on account -of the agreement, an act, in short, unequivocally referring to, and resulting from the agreement, and such that the party would suffer an injury amounting to-fraud, by the refusal, to execute that agreement; in such case the agreement.will be decreed to be specifically performed. 2 Br. Cha. Ca. 140; 1 Br. Cha. Ca. 412; 3 Atk. 4; 2 Anstr.
 
 424;
 
 Ambl. 586 ; 1 Sch. & Lef. 41; 14 Ves, 386.
 

 This principle' has been lately questioned in England, and, some of the judges have thought, has been carried too far; but it has not, we believe, been overruled.
 

 ■ It was undoubtedly supposed in Virginia to be the sound construction of the statute, when this contract was made • and as the.land then lay in Virginia, Kentucky being then a part of that state, this construction forms the law of the contract. In affirming the decree of the 27th of October 1817, the chancellor said, “ the court being of opinion that this is not a case
 
 *104
 
 embraced by the act against frauds and perjuries, doth adjudge, &c.” ■ A change of the law afterwards made in Kentucky, cannot affect contracts previously valid.
 

 It remains to inquire, whether .the appellants are to be considered as purchasers without notice of the equity set up by the appellees.
 

 The defendants do not deny notice, in- those explicit terms which courts of equity require. They deny notice of a valid claim; bu.t not such notice as ought to put them on inquiry.
 

 They are the joint purchasers of the two tracts of one thousand acres each, lying south of Tennessee river. They purchased these tracts from Williams on the 6th of January 1818. The articles of that daté recognize the claim of Carrington’s heirs, and contain astipulation on the part of Williams, •“ to use due diligence in having it extinguished and quieted.”
 

 William Caldwell purchased the tract of one thousand acres in the county of Adair, on the 30th day of August 1815. The contract of that date contains this stipulation : “ arid the said Williams agrees that the said Caldwell shall not be bound to pay any farther part of the consideration aforesaid, except what is this day paid, until he, the said Williams, shall settle the dispute between himself and the.heirs and representatives of George Carrington- deceased, concerning the title to the said land.”
 

 A contract.was entered, into between Williams and Samuel Brents on the 31st day of August 1815,' by which Brents engages, for a part of the land, “ to attend to the sec.urement of the titles to the said lands,” “ according to the laws of the state, by surveying,, registering, and patenting the same, or by doing-such other acts as may be necessary for the purposes aforesaid.” He says in his answer, that on the 12th of November 1816, patents issued to the said John R. Williams for two tracts on Beaver creek, the one for three hundred arid fifty acres, and the'other for five hundred acres. . The defendant agreed to - take the tract of three hundred and fifty acres, and one hundred and fifty acres, part of the five hundred acre tract, for his services. Afterwards, on the 5th of January 1818, he contracted for the residue of the two tracts, for which he received a conveyance dated on the same day. The answer, proceeds, “ at the time of receiving the said conveyance, or at any time
 
 *105
 
 jefore, this respondent had no knowledge or information of any valid claim to said land, by any other person than the said John R. Williams. This respondent does, not now recollect of hear- • ing any thing of the claim of the complainants before his conveyance ; but had only heard that some verbal or illegal claim was set up in some bill filed in some county court of Virginia; of which verbal claim this respondent did not think himself bound to take notice.”
 

 He does, not recollect that the claimant was named'Carring- ' ton, but he does .recollect having heard that a gurt was instituted in one of the county courts of Virginia: but as the contract ' was by parol, he did not think himself bound to notice it. ’Now he knew,.or might have known, that the suit was instituted in the county of Halifax,' that being the residence of Williams, whose agent he was, and who was the defendant in the suit. He could have received full information from Williams himself, who never attempted to conceal the claim. His conveyance of the two thousand acres of his claim, lying south of the Tennessee river, dated the day after his conveyance to Brents; contains a stipulation respecting the claim of Carrington’s heirs, showing plainly that the claim was previously well known to the parties. His deed to William Caldwell shows that it was known as early as 1815.
 

 Isaac Caldwell’s claim is limited to his third part of the two •thousand acres south of Tennessee, conveyed on the 6th of January 1818. In addition ta the notice contained in the deed, he states in his answer, that he had seen the proceedings in the suit brought by Carrington against Williams, in which ■the decree of 1803 was pronounced; had consulted eminent counsel on it, and had been advised that the title of Williams would prevail over, that set up' by Carrington. Under this advice he purchased. The record contains other evidence, to which it is thought unnecessary to refer.
 

 In addition to these unequivocal proofs, that the appellants had received notice of the contract made by Carrington with John Williams, it is worthy of .observation, that with the exception of Brents, they purchased equitable titles, and were bound to notice any prior equity.
 

 It is too clear for controversy that the plaintiffs placed full, confidence in the protection furnished by the statute of frauds ;
 
 *106
 
 and believed that the contract made between Carrington and •Williams, being
 
 by
 
 parol wjis void, notwithstanding its full execution Qn the part of Carrington.
 

 There is no error in the decree of the circuit court; and it is affirmed, with costs.
 

 This cause came on to be heard on the transcript of the record from the circuit court-of the United Statés for the district of Kentucky, and was argued by counsel; on consideration whereof, it is ordered, adjudged and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby' affirmed, with costs.