## J. Austin Williams vs. Thomas P. Smith.

Suffolk. January 17, 18, 1894. — May 14, 1894.

Present: Field, C. J., Allen, Morton, & Barker, JJ.

*Agreement to convey Land — Statute of Frauds.*

In an action for breach of an agreement to convey land to the plaintiff there was evidence of an oral offer made by the defendant on May 12, 1892, to sell the land to the plaintiff "within a reasonable time." The next day, in response to a telegram of the plaintiff that he had notified F. that "I have taken option from you of N. land," the defendant replied, in writing, on a postal card, "The land is yours if you want it." Two weeks later, on May 25 or 27, in a second interview, the plaintiff testified that the defendant "definitely concluded to sell to me. The transaction was concluded definitely. He said I could have the land for ten thousand dollars, and I agreed to take it then and there." On June 2 the defendant again wrote to the plaintiff, in substance, that he was advised by counsel that as administrator he had no authority to convey and could not give a title; that he ought not to have considered any price under $11,000, but that he had been overpersuaded and made to say what he should not have said, and concluded, "I do not know what I can say more, but to throw myself upon your generosity." On June 17 he wrote again, saying that he had conveyed the land to a third person, and was very sorry for the whole affair, and threw himself on the generosity of the plaintiff. On July 6, in response to a letter written by the plaintiff's son on his behalf stating briefly the agreement from the plaintiff's point of view, and seeking to obtain from the defendant an admission that such were the facts of the case, the defendant wrote, "In reply to yours of July 2, will say I did say to your father that he could have the refusal of land at N. for $10,000, for ten days." *Held*, that the plaintiff's case must rest on the oral contract, which was made at the interview on or about May 25, and that there was nothing in writing sufficient to show that the defendant entered into that contract.

If, in an action for breach of an agreement to convey land in which the answer sets up the statute of frauds, no one paper alone which is formally signed purports to express the terms of the contract, all the correspondence between the parties must be considered in order to see what the contract actually was, as shown by the writing.

Contract, for breach of an agreement to convey certain land to the plaintiff.

The declaration alleged that the defendant, on or about May 25, 1892, in consideration of the plaintiff's promise to buy certain land in Newtonville, agreed to sell, and within a reasonable time thereafter to convey it to him for the sum of $10,000; that the plaintiff was at all times ready and willing to pay the purchase price and to accept a deed of the land, but that the

defendant, in violation of his contract, subsequently, on June 16, 1892, a reasonable time for the performance of the contract not having then elapsed, sold and conveyed the land to °another person, thereby preventing the performance of his contract with the plaintiff. Answer: 1st, a general denial; 2d, the statute of frauds.

Trial in the Superior Court, without a jury, before *Maynard,* J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that on May 12, 1892, at an interview between the plaintiff and the defendant, the latter orally offered to sell to the former certain land in New-tonville within a reasonable time for $10,000. Subsequently the plaintiff telegraphed to the defendant, "I have notified French that I have taken option from you of Newtonville land," and in response thereto received from him a postal card, dated May 13, 1892, saying, "Your telegram is at hand, . . . and the land is yours if you want it. Only do decide quickly as pos-sible." The parties had a second interview at the Parker House, in Boston, at some time between May 25 and May 27, and the substance of that interview, as related by the plaintiff, was that "Smith definitely concluded to sell to me. The trans-action was concluded definitely. He said I could have the land for ten thousand dollars, and I agreed to take it then and there. There was no question about the sale and purchase for ten thousand dollars of that piece of land. Mr. Smith gave me a plan of the property at the time I bought the property, at the interview of May 25 to 27."

Subsequently the plaintiff received a letter from the de-fendant, dated June 2, 1892, which was as follows: "I am in a fix, as it looks at this moment. My cousin is guardian for the children, and Mr. Teele, the lawyer, says, as he looks at the case, the guardian must give the title, and the administrator has not the authority. This is the way the matter stands, that I cannot give a title. The moment I talked with Mr. Page, he hustled right round and found a man who would give $10,250, and no commission, and he is proceeding to act on this, and I suppose went to Cambridge this morning; if he carries his point before the judge, I am left. That afternoon at the Parker House, or even early the next morning, I should

have said, ' Mr. Williams, this whole matter is in the hands of Messrs. French and Fuller, and I cannot talk with you for less than $11,000.' I did say this, over and over again, but your persuasive eloquence made me say what I should not have said, and what you would not have said had the relations been reversed. I do not know what I can say more, but to throw myself upon your generosity, and only say, write and let me know my fate."

The plaintiff received a second letter, dated June 17, 1892, which was as follows: " The deed is done. Mr. Ross has two deeds, one from me, and the other from Mr. Page. I am very, very sorry for the whole affair. I throw myself on your generosity, believing you will do by me as you would be done by."

On July 2, 1892, in order to obtain further evidence to aid in making out a memorandum sufficient to satisfy the statute of frauds, the plaintiff's son, who was an attorney in Connecticut, acting in his father's behalf, wrote to the defendant as follows: " My father has asked me to correspond with you in reference to your agreement to sell him the Newtonville land on Watertown, Walnut, and Lowell Streets, for $10,000, and see if we cannot adjust it. You both, do you not, agree that these are the facts of the case? If so, can't the whole matter be settled amicably, and without expense to either of you?"

To this he received the following reply, dated July 6, 1892: " In reply to yours of July 2, will say, I did say to your father that he could have the refusal of land at Newtonville for $10,000 for ten days, and the next morning, in reply to a telegram, I think, I confirmed the matter by postal. I then supposed I alone could give a title; in two or three days I found out that this could not be done. I immediately wrote to your father what the trouble was. Practically this is how the case stands at this writing, only that another party has a deed of the land from Mr. Page and myself jointly; this I presume you know. I did not receive any written notice within the ten days, or even to this day, that your father would take the land. I was in hopes that your father would think the matter too trifling to pursue. Morally, I do not feel under the slightest obligation. If you go at me through the courts, I will see what I can do to defend myself. At this writing I have not said a word to any

lawyer; . I never yet have been in court, and never desire to be. I have the highest respect for your father. I believe him to be a thoroughly honest man, but it does seem to me he is straining things in this affair. Can't you prevail upon him to let it drop, and perhaps save lots of tribulation for both of us?"

The plaintiff further introduced evidence that the defendant, by deed dated June 15, 1892, as administrator of the estate of Kate Page, conveyed the land in question, acting under the license of the Probate Court, for $10,250, to one Ross. The plaintiff also introduced evidence on the question of damages, and at the close of his case the judge ruled that the action could not be maintained, and found for the defendant. The plaintiff alleged exceptions.

*E. I. Smith*, for the plaintiff.

*J. O. Teele*, for the defendant.

ALLEN, J. The question which arises in this case under the statute of frauds is whether the contract declared on is shown by any sufficient memorandum or note thereof in writing signed by the defendant. If not, the action cannot be maintained. Pub. Sts. c. 78, § 1.

The contract declared on is an agreement made by the defendant on or about May 25, 1892, to sell to the plaintiff certain land, in consideration of the plaintiff's promise to buy the same; a mutual agreement for sale and purchase, entered into by both parties, and concluded on that day. The plaintiff testified that such a mutual agreement was orally made.

The writings signed by the defendant which are relied on to prove this agreement on his part are four in number; namely, a postal card on May 13, and letters dated respectively June 2, June 17, and July 6. The plaintiff admits that the contract is not sufficiently shown by the first three of these writings, and in order, if possible, to get further evidence, his son, who was an attorney in Connecticut, acting in his behalf, wrote to the defendant a letter, dated July 2, 1892, stating briefly the agreement according to the plaintiff's view, and seeking to get from the defendant an admission that this was a correct statement of the facts. The defendant, however, in his answer, dated July 6, stated the matter differently, as follows: " In reply to yours of July 2, will say I did say to your father that he could have the

refusal of land at Newtonville for $10,000 for ten days." This was a mere proposal or offer. It is not the contract declared on, nor does it appear to have been relied on as a contract at the trial. The plaintiff in his testimony, indeed, said that an oral offer was made by the defendant on May 12 to sell the land " within a reasonable time." He added that he had a second interview with the defendant some time between May 25 and May 27, when the defendant " definitely concluded to sell to me. The transaction was concluded definitely. He said I could have the land for ten thousand dollars, and I agreed to take it then and there." So far as appears, no claim or suggestion was made at the second interview, or at the trial, that the defendant's previous offer was still open ; and if such claim or suggestion had been made, the defendant's letter of July 6 contradicts it. The plaintiff's case, both in his declaration and in his testimony at the trial, was put upon an agreement made by the defendant on or about May 25, and not upon a previous offer by the defendant which was accepted by the plaintiff on that day.

It was not in dispute that some offer had been made by the defendant at the first interview. The postal card dated May 13, in reply to the plaintiff's telegram, shows this, though it does not show how long the offer was to remain open. The postal card was very general, and does not assume to contain any terms or details of the proposal, except merely that some offer had been made. The actual oral contract upon which the plaintiff's case must rest is that which was made at the interview on or about May 25.

In determining whether there is written proof of that contract, we may and must look at all the correspondence. Where no one paper alone, which is formally signed, purports to express the terms of the contract, all the letters that passed between them must be considered in order to see what the contract actually was as shown by the writings. _Hussey_ v. _Horne-Payne_, 4 App. Cas. 311, 316. _Bristol, Cardiff, & Swansea Aërated Bread Co._ v. _Maggs_, 44 Ch. D. 616. _Bellamy_ v. _Debenham_, 45 Ch. D. 481.

Looking at all that passed between the parties, we find nothing in writing sufficient to show that the defendant entered into the contract declared on, and testified to by the plaintiff as having been made orally.        _Exceptions overruled._