## SCHOLTZ v. NORTHWESTERN MUT. LIFE INS. CO.

(Circuit Court of Appeals, Eighth Circuit. March 13, 1900.)

No. 1,255.

1. AGREEMENT TO LEASE—TERMS UNSETTLED—STATUTE OF FRAUDS.

An agreement to lease, which describes the premises intended to be demised in such manner as to fully identify them, specifies the length of time the lease is to run, and the amount of rent to be paid monthly, is sufficiently complete to be enforced, either in equity or by a suit at law, although it provides, the "said lease to be in the usual form in use" in the city where the premises are situated.

2. SAME.

The clause in an agreement for a lease for a term of years, that "said second parties are to have the right to make such alterations and repairs in said building as they see fit,—not, however, without first submitting the same to said company or its agent, and obtaining their or his consent therefor,"—is to be construed as the substance of a special covenant which was to be inserted in the lease when drawn, and will not prevent the enforcement of an agreement otherwise complete, on the ground that the minds of the parties have not met as to all the terms of the lease, sufficiently to satisfy the statute of frauds.

3. SAME—BREACH—INSTRUCTIONS TO JURY.

Where, in an action for damages for the breach of an agreement for a lease, all of defendant's objections to the sufficiency of the contract had been overruled, and the agreement admitted in evidence, and no other issue under the pleadings remained, save the amount of damages sustained, it was not error for the court to withdraw from the considerations of the jury all questions presented by the pleadings, save the amount of damages to which plaintiff was entitled.

In Error to the Circuit Court of the United States for the District of Colorado.

This action was brought by the Northwestern Mutual Life Insurance Company, the defendant in error, against Edmund L. Scholtz, the plaintiff in error, and William H. Hunter, to recover damages for the alleged breach of an executory agreement to enter into a lease. The contract sued upon was as follows:

"This agreement, by and between the Northwestern Mutual Life Insurance Company, by Samuel C. Adams, agent, of the first part, and E. L. Scholtz and W. H. Hunter, parties of the second part, witnesseth, that the said party of the first part, in consideration of the sum of seven hundred and fifty (750) dollars, the receipt whereof is hereby acknowledged, and in consideration of the agreement of the parties of the second part hereinafter set forth, covenants and agrees to lease to the parties of the second part that certain storeroom and basement in the city of Denver, on the corner of Curtis and Sixteenth streets, in the Tabor Opera-House Block (including that part of said storeroom now occupied as a cigar store), for the term of three (3) years from the thirty-first day of May, 1897, at a monthly rental, payable monthly in advance, for the first year of seven hundred and fifty (750) dollars per month, for the second year of eight hundred (800) dollars per month, and for the third year of eight hundred and fifty (850) dollars per month; said lease to be in the usual form in use in the city of Denver, and the said above-mentioned payment of seven hundred and fifty (750) dollars is to be regarded as the rent for the first month (being the month of June, 1897). Said second parties are to have the right to make such alterations and repairs in said building as they see fit,—not, however, without first submitting the same to the said company or its agent, and obtaining their or his consent therefor; but all such repairs and alterations are to be at the sole expense of the said parties of the second part, without any cost or liability to the said party of the first part. Said party of the first part agrees to pay the water rate for the said leased premises. And the said party

of the first part will furnish steam. heat for said room free of expense to the said parties of the second part. Light to be at the charge of the parties of the second part. And the parties of the second part, in consideration of the premises and of the agreements of the party. of the first part, hereby agree to rent said premises at the above rate and on the above terms of the said party of the first part, and to enter into a lease as above set forth for such purpose.

"The Northwestern Mutual Life Ins. Co.,

"By Sam'l C. Adams, Agt.

"W. H. Hunter.

"E. L. Scholtz."

In May, 1897, shortly after the execution of the foregoing agreement, a lease was prepared, and submitted to Scholtz & Hunter for their signature. No objection was made to the form of the lease, but they delayed signing the same; and on or about July 7, 1897, they declined to enter into the lease, giving as a reason for such refusal that they could not get money to make the alterations in the leased premises which they had designed to make. A portion of the premises described in the aforesaid agreement was occupied by a tenant at the time the aforesaid agreement was executed, and on July 29, 1897, Scholtz .& Hunter gave to the agent of the plaintiff company written authority to collect the rent thereof for the month of July, "and to credit the same on our rent of store, No. 1000 Sixteenth street, for that month." The trial resulted in a judgment in favor of the plaintiff below in the sum of $2,970, to reverse which the present writ of error is brought.

Henry J. O'Bryan (J. Grattan O'Bryan, on the brief), for plaintiff in error.

John H. Denison (Ralph Talbot and William H. Wadley, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The principal contention of the plaintiff in error, who was a defendant below, is that the agreement above recited does not show that the minds of the contracting parties had met as to all the terms of the lease, and that the agreement is for that reason insufficient to satisfy the statute of frauds. This contention is based entirely on the ground that the agreement contains the clause, "Said lease to be in the usual form in use in the city of Denver," and the further clause, "Said second parties are to have the right to make such alterations and repairs in said building as they see fit,—not, however, without first submitting the same to said company or its agent, and' obtaining their or his consent therefor." It may be conceded 'that an agreement to enter into a lease will neither be enforced in equity nor at law if it appears from the face of the agreement that any of the terms of the lease, no matter how unimportant they may seem to be, are left open to be settled by future conferences between the lessor and lessee. In such cases there is no complete agreement; the minds of the parties have not fully met; and, until they have, no court will undertake to give effect to those stipulations that have been settled, or to make an agreement for the parties respecting those matters that have been left unsettled. Mayer v. McCreery, 119 N. Y. 434, 23 N. E. 1045; Ridgway v. Wharton, 6 H. L. Cas. 238, 307; Law v. Pemberton (Com. Pl.) 31 N. Y. Supp. 21; Nasanowitz v. Hanf (Sup.) 39 N. Y. Supp. 327; Forster

v. Rowland, 7 Hurl. & N. 103, 107. It seems to be equally well set-
tled, however, that an agreement for a lease which describes the
premises intended to be demised in such a manner as to fully iden-
tify them, and specifies the length of time the lease is to run, and
the amount of rent to be paid, either by the month or by the year,
is sufficiently complete to be enforced either in equity or by a suit
at law, provided the instrument does not disclose that there are
other matters which the parties designedly left open for further
consideration before the lease was to be executed. The authorities
show that agreements to execute leases which are complete and defi-
nite to the extent above indicated have been enforced both at law
and in equity, and that they are not rendered too indefinite for en-
forcement if they contain a stipulation for the insertion of the
"usual covenants." Kendall v. Hill, 6 Jur. 968; Sharp v. Milligan,
23 Beav. 419; Bond v. Rosling, 1 Best & S. 371; Cochrane v. Mining
Co., 16 Colo. 415, 419, 420, 26 Pac. 780; Tayl. Landl. & Ten. (8th
Ed.) § 44, and cases there cited. If either the lessor or the lessee
desires any special or unusual covenant to be inserted in a lease,
he should stipulate for its insertion in the preliminary agreement,
since in the absence of such a stipulation the law will imply that
the parties had in view the usual covenants or the usual form of
lease; having reference to the character of the demised premises,
and the place where they are situated. If the preliminary agree-
ment contains a clause that the lease shall contain "the usual cove-
nants," or "all usual and necessary covenants," or be in the "usual
form," such clauses do not render the agreement incomplete or too
uncertain for enforcement, if it is otherwise sufficient, because such
clauses express no more than the law would imply in their absence.
Garrard v. Grinling, 2 Swan. 244, 249; Wilkins v. Fry, 1 Mer. 244,
263, 264; Tayl. Landl. & Ten. (8th Ed.) § 44; Cochrane v. Mining
Co., 16 Colo. 415, 419, 26 Pac. 780. We think, therefore, that the
clause found in the agreement now under consideration, "Said lease
to be in the usual form in use in the city of Denver," does not in-
validate the agreement, or render it incapable of enforcement, since
it has the same legal effect that it would have had if those words
had been omitted. The parties to the contract did not say that the
form of the lease should be left open for further determination by
them, but that it should be in the usual form in use in the city of
Denver; and this a court of chancery would have said when called
upon to enforce it specifically, if the agreement itself had contained
no reference to the form of the lease or to the covenants which it
should contain. Moreover, when a lease was prepared by the plain-
tiff company in pursuance of the agreement, and was submitted to
the defendants below for their inspection and signature, they did
not object to it or refuse to execute it because it was not in proper
form, but for the reason that they were unable to make such im-
provements and alterations in the leasehold premises as they had
contemplated. In view of such conduct on their part, it must be
presumed that the lease tendered to them was in due form, and was
such a lease as was contemplated by the terms of the provisional
agreement.

The other clause found in the contract in suit to which our atten-
tion is directed, namely, the clause permitting alterations in the
demised premises, subject to the approval of the lessor, has refer-
ence, we think, to a special covenant which was to 'be inserted in
the lease.  Looking at the contract as a whole, it seems to have con-
templated an immediate entry by the lessee, and a speedy execu-
tion of a lease embodying all the terms and conditions of the provi-
sional agreement.  We are, therefore, constrained to hold that the
clause in question stated the substance of a special covenant which
was to be inserted in the lease when drawn, and that it was not
expected that the alterations and repairs should be fully deter-
mined upon by the lessee and assented to by the lessor before a
lease was executed.  Any other view would render the agreement
which was entered into tentative and valueless, whereas it seems to
have been intended as a definite settlement of the rights of the par-
ties, by a contract which each could enforce.  Moreover, such a
special covenant as the one in question is not an unusual covenant.
The lessees of buildings situated in large cities and towns some-
times stipulate for the insertion of such a covenant in their re-·
spective leases, to enable them to alter the demised premises at any
time during the term when alterations are deemed expedient or
necessary.  We are of opinion, therefore, that no error was com-
mitted by the trial court in admitting the agreement in evidence, or
in refusing the various instructions relative to the construction of
the agreement which were asked by the defendants.

It is further assigned for error that the trial court admitted some
irrelevant and immaterial testimony, and that it erroneously with-
drew from the consideration of the jury all questions presented by
the pleadings, save the amount of the damage.  An examination of
the record has satisfied us, however, that no error prejudicial to the
defendants below was committed, either in admitting or excluding
evidence, and it would subserve no useful purpose to review such
exceptions in detail.  As respects the other point, we deem it suffi-
cient to say that after the contract in suit had been admitted in
evidence, and the defendants' various objections thereto had been
overruled, there was no issue, under the pleadings, which the jury
could properly determine, except the amount of the damage that
had been sustained by the breach of the agreement.  The substan-
tial question in the case was whether the contract sued upon was
so far complete and definite in its terms that it could be enforced.
It is conceded that the jury were properly instructed as to the meas-
ure of damage, and that being so, and the contract in suit having
been properly construed, and the breach thereof admitted, the judg-
ment below cannot be disturbed.  It is accordingly affirmed.