## THOMAS J. BAIRD INV. CO. v. HARRIS.

(Circuit Court of Appeals, Eighth Circuit. November 8, 1913.)

### No. 3,875.

1. VENDOR AND PURCHASER (§ 2*)—VALIDITY OF CONTRACT—WHAT LAW GOVERNS.

The validity of a contract for the sale of land must be determined by the law of the state where the land is situated.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 2; Dec. Dig. § 2.*]

2. FRAUDS, STATUTE OF (§ 106*)—CONTRACT FOR SALE OF LANDS—REQUISITES AND SUFFICIENCY OF WRITING—SEPARATE WRITINGS.

An agreement for the sale of land within the statute of frauds will not be enforced in equity or at law, if it appears from its face that any of its terms are left open to be settled by future conferences between the parties; but it is sufficient to validate the contract if.in the course of the transaction the party to be charged in some writing signed by him or his authorized agent recognizes or ratifies an agreement sufficiently explicit in terms and disclosed in writings which show unmistakably that they relate to the same transaction.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 193, 210, 211; Dec. Dig. § 106.*]

3. FRAUDS, STATUTE OF (§ 153*)—STATUTE AS DEFENSE—PLEADING.

A general denial by the defendant, in an action on a contract for the sale of lands, although coupled with an admission of the execution of the contract set out, is as effective to let in the defense of the statute of frauds as though the statute had been specially pleaded.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 367; Dec. Dig. § 153.*]

4. VENDOR AND PURCHASER (§ 8*)—VALIDITY OF CONTRACT.

A contract to sell land and convey the same by a good title is not violated because the vendor is not the actual owner if he has an enforceable contract for its purchase, and the tender of a deed from a third person, conveying the requisite title, is a compliance with his contract. Nor is it material that the vendor depended upon payments required to be made by the purchaser before or at the time of delivery of the deed to pay off incumbrances.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 5; Dec. Dig. § 8.*]

5. PLEADING (§ 290*)—ANSWER—ADMISSIONS BY FAILURE TO DENY AGENCY—OKLAHOMA CODE.

Under Rev. Laws Okl. 1910, § 4759, which provides that "in all actions allegations of any appointment of authority shall be taken as true unless the denial of the same be verified," an allegation in the petition, in an action for breach of a contract by defendant to purchase lands, that a person named was the duly authorized agent of defendant to act for him in the transaction, unless denied under oath, is sufficient to establish the agency, and that the authority of the agent was in writing, where that was necessary.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 859–863, 886½; Dec. Dig. § 290.*]

6. FRAUDS, STATUTE OF (§ 118*)—ADMISSIBILITY OF EVIDENCE TO AID MEMORANDUM.

In an action by the vendor for breach of a contract by which defendant agreed to purchase certain lands where some of the terms of the sale were

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not stated in the written contract, a bill in equity, signed and sworn to by defendant and filed by him in a prior suit for the cancellation of the contract on the ground of fraud, in which such terms were set out, was admissible in evidence as a recognition and admission of the contract, including such terms for the purpose of taking it out of the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 199, 262–265; Dec. Dig. § 118.*]

**7.** FRAUDS, STATUTE OF (§ 118*) — EVIDENCE TO AID MEMORANDUM — SUFFICIENCY.

Evidence, consisting of letters and other writings signed by the defendant or his authorized agent, *held* to contain sufficiently specific recognition and acknowledgment of the terms of a contract for the sale of land, in connection with a written memorandum signed at the time, to render the contract valid and enforceable under the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 199, 262–265; Dec. Dig. § 118.*]

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action at law by the Thomas J. Baird Investment Company against D. W. Harris. Judgment for defendant, and plaintiff brings error. Reversed.

Plaintiff in error brought this suit below to recover damages laid at $11,076.95 for breach of contract for the sale to defendant in error of certain real estate located in Nelson county, N. D.

The petition declared upon a contract consisting of a writing called an "earnest money contract of sale," dated October 11, 1908, supplemented by oral agreements alleged to have been subsequently ratified and recognized in writing by the defendant personally and through his duly authorized agent and attorney. The original written contract is attached to the petition as "Exhibit A," and is as follows:

"Earnest Money Contract of Sale.

"Deer Creek, Okla. 10–11, 1908.

"Received of D. W. Harris of Deer Creek, Okla., cash $500. Note $1000. Due Nov. 11, 1908. Total $1,500. As earnest money and in part payment for the purchase of the following described property situated in the county of Nelson and state of North Dakota, viz.:

"All of section 21, the north half of section 28, the east half of section 20 and the southeast quarter of section 17, all in township one hundred and fifty-one, north of range 57 west, which we have this day sold and agreed to convey according to the conditions of this contract to said D. W. Harris for the sum of forty-three thousand and two hundred dollars ($43,200) on terms as follows, viz.:

"Five hundred dollars ($500) in hand paid as above, and

| | | |
|---|---|---|
| $1,000 Nov. 11, 1908 | | $2,140 Jany. 1, 1912 |
| $3,500 Dec. 11, 1908 | | $2,140 Jany. 1, 1913 |
| $4,000 Jany. 11, 1909 | | $2,140 Jany. 1, 1914 |
| $2,140 Jany. 1, 1910 | Real Estate, | $8,000 |
| $2,140 Jany. 1, 1911 | Fixtures, | $1,000 |
| | Estimate Dis. | $1,000 |

with interest on deferred payments at 6 per cent. from date until paid, payable Jany. 1, annually, payable on or before the dates as named above, or as soon thereafter as a warranty deed conveying a good title to said land is tendered, time being considered the essence of this contract.

"And said sale, then D. W. Harris is to deed the following real estate to

the Thomas J. Baird Investment Co., of Lakota, N. D. The south nine (9) feet of lot 11 and lot 12 and lot 13 and 14 all in block 2 in Deer Creek, Okla., free of incumbrance, D. W. Harris is to receive credit of $8,000, said company is to allow said Harris $1,000 credit for fixtures in said Harris' store.

"The Thomas J. Baird Investment Company agrees to stand shrinkage not to exceed $1,000 or any part thereof from the cost of said D. W. Harris' stock in closing out same, and allow credit to Harris for amount of said shrinkage.

"And it is agreed that if the title to said premises is not good and cannot be made good within sixty days from date when first payment shall become due, this agreement shall be void, and the above mentioned five hundred dollars ($500) refunded, but if the title to said premises is then good, in the name of the grantor, and said purchaser refuses to accept the same said five hundred dollars ($500) shall be forfeited to Thomas J. Baird Investment Co.

"But it is agreed and understood by all parties to this agreement that said forfeiture shall in no way affect the rights of either party to enforce the specific performance of this contract.

"[Signed]   Thomas J. Baird Investment Co.,
"By Thomas J. Baird, Prest."

"I hereby agree to purchase the said property for the price and upon the terms above mentioned, and also agree to the conditions of forfeiture and all other conditions herein expressed.

"[Signed]                   D. W. Harris."

It will be observed that in this writing, of the total consideration of $43,-200, but $29,700 is provided for in the specified terms of payment. Concerning matters not contained in this earnest money contract, the petition says:

"The difference in amount between the total purchase price of $43,200 named in said contract, and the several sums specified therein, amounting to said sum of $29,700, was to be paid by the said defendant assuming a mortgage on said premises for the principal sum of $13,500, and which he agreed to pay as a part of the consideration of said transfer of said property to him, and said property was to be conveyed to him subject to said incumbrance of $13,500. That at the time of the making of said contract, the said defendant orally agreed to assume said mortgage of $13,500 as a part of the consideration of the purchase price of said real property above described, and thereafter recognized and ratified said oral agreement in writing, the same being contained in letters written by the said defendant, and by his duly authorized agent and attorney to this plaintiff, copies of which are attached hereto and reference to which will be specifically made herein. * * *

"That it was orally agreed between the said plaintiff and the defendant, and which said oral agreement was thereafter ratified and recognized in writing by the said defendant, through letters written by himself and his duly authorized agent and attorney, and copies of which are hereto attached, and to which reference will be specifically made hereafter, that the deed to the said defendant for the real property described in said contract should not be delivered to the said defendant until said three notes, aforesaid (aggregating $8,500), were paid, and that the proceeds of the payment of the said notes were to be used by the said plaintiff in taking up and satisfying other incumbrances on said real property hereinbefore referred to, other and in addition to the said mortgage of $13,500, and that upon the payment of said notes, and the execution of the five notes, each for $2,140, set out and described in said written contract, and the execution and delivery to the plaintiff by the defendant of a real estate mortgage on the land purchased by him securing the payment of said notes, and the delivery by the defendant to the plaintiff of a deed to the real property situated in the town of Deer Creek in the county of Grant, and the state of Oklahoma, which he was to convey to the plaintiff as a part of the consideration of said contract; that thereupon he was to receive from the plaintiff the deed to the real property situated in the county of Nelson and state of North Dakota purchased by him. * * *

"That the written contract between plaintiff and defendant, a copy of which is hereto attached marked 'Exhibit A,' being silent as to the manner of the payment of said sum of $13,500 in addition to the several payments therein specified, and which was the balance of the total purchase price of $43,200, was supplemented by oral agreement between plaintiff and defendant, and by the correspondence had between plaintiff and defendant, and plaintiff and defendant's duly authorized attorney, the said Emery H. Breeden, by the recognition and ratification of the agreement between plaintiff and defendant as contained in said correspondence, and that the complete contract between plaintiff and defendant consisted of said original contract, in writing, and said oral agreement, and said correspondence, all as set forth herein."

To the petition were annexed, and especially referred to therein as exhibits, in addition to Exhibit A, aforesaid, the following:

Exhibit B: A letter from defendant to Baird, dated October 29, 1908.

Exhibit C: A letter from plaintiff to the First National Bank of Medford, Okl., dated November 16, 1908, containing the earnest money contract aforesaid; the three notes first specified therein for collection; a warranty deed from one Henry L. Pitts, the owner of the lands purchased, to the defendant; the five notes of $2,140 each; and a mortgage securing the same to be executed by the defendant. This letter contained specific directions respecting the disposition of these papers, and acts to be done by the defendant in performance of the contract; it also embraced the following statement:

"These papers are sent you upon the request of Mr. Harris. We extended the due date of the first note to the 20th of this month. Inasmuch as these papers are sent to Oklahoma by the request of Mr. Harris, if there are any expenses attached, he should pay them. In remitting, we would prefer Chicago exchange. Kindly acknowledge these papers and if there is anything about them you do not understand, please write us. We have sent all the abstract to Mr. Harris."

Exhibit D: The warranty deed from Pitts and wife to the defendant, to which reference has been made.

Exhibit E: A letter from plaintiff to defendant, of date November 12, 1908.

Exhibit F: A letter from defendant to Baird, of date November 18, 1908.

Exhibit G: A letter to plaintiff from Emery H. Breeden, alleged to be the agent and attorney of defendant, of date November 28, 1908.

Exhibit H: A letter from Breeden to Baird, of date December 4, 1908.

The contents of these exhibits will be referred to hereafter to such extent as may be deemed material.

In his answer the defendant first interposed a general denial to the allegations of the petition. In the course of three further defenses stated in the same answer, he admits the agreement and contract declared by the plaintiff, but charges that he was induced to make the same through certain false and fraudulent representations, upon which he relied, and as the result of a conspiracy to defraud him formed by Baird and a confederate named Lamb; that as soon as he learned of the fraud practiced he promptly took steps to rescind the contract. The misrepresentations alleged were that the mortgage of $13,500, which defendant was to assume, would not be due and payable for five years after the date of the contract, and would not be due and payable until after the maturity of the mortgage to be given plaintiff to secure the five notes of $2,140 each; when in truth and in fact the former mortgage matured in a little more than one year.

At the trial defendant relied upon the statute of frauds as a defense, and at the close of plaintiff's case interposed a demurrer to the evidence; this, the court sustained, upon the disclosed grounds that the contract sued upon had not been successfully established, because essential parts of it were not evidenced by any writing signed by the defendant, or sufficiently authorized by him; and, as an incident to this, that the correspondence of defendant's attorney, Breeden, was not admissible because the evidence did not show his authority to have been in writing, as required by the statute. The court in its ruling conceived the Oklahoma statute to be controlling.

P. C. Simons, of Enid, Okl. (Parker & Simons, of Enid, Okl., on the brief), for plaintiff in error.

J. C. Robberts, of Enid, Okl., and Emery H. Breeden, of Medford, Okl. (John F. Curran, of Enid, Okl., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

VAN VALKENBURGH, District Judge (after stating the facts as above). [1] As this is a contract for the sale of and affecting the title to real estate, its validity must be determined by the law of the state in which the land is situated. Clark v. Graham, 6 Wheat. 577, 5 L. Ed. 334; Caldwell v. Carrington, 9 Pet. 86, 9 L. Ed. 60. Particularly is this true, since, as we shall see, the statute relied on affects the validity of the contract and not the remedy New York Third National Bank v. Steel, 129 Mich. 434, 88 N. W. 1050, 64 L. R. A. 119. The statutes of North Dakota and Oklahoma are identical. The suit was brought in Oklahoma, but the land involved is located in the former state; consequently, the interpretation placed upon the statute by the Oklahoma courts, while persuasive and entitled to great respect, cannot be viewed as decisive and controlling in the case before us.

The terms of the statute are these:

"The following contracts are invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged or by his agent: * * * An agreement for the leasing for a longer period than one year or for the sale of real property or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent be in writing, subscribed by the party sought to be charged."

In the absence of express decision to the contrary by the Supreme Court of North Dakota, we think the following generally accepted rules to be applicable:

[2] An agreement within the statute will not be enforced in equity nor at law if it appears from the face of the agreement that any of the terms, no matter how unimportant they may seem to be, are left open to be settled by future conferences between the parties thereto. In such cases there is no complete agreement. Scholtz v. Northwestern Mutual Life Ins. Co., 100 Fed. 573–574, 40 C. C. A. 556. Such agreement or contract may be authenticated and established through the medium of letters and separate writings and documents, provided they refer to each other and to the same persons and things, and manifestly relate to the same contract and transaction. Wood on Statute of Frauds, § 345, p. 655; Atwood v. Rose et al., 32 Okl. 355, 122 Pac. 929; Swallow et al. v. Strong et al., 83 Minn. 87, 85 N. W. 942. It is sufficient if in the course of the transaction the party to be charged in some writing signed by him, or his duly authorized agent, recognizes or ratifies an agreement sufficiently explicit in terms and disclosed in writings which show unmistakably that they relate to the same transaction. Beckwith v. Talbot, 95 U. S. 289, 24 L. Ed. 496;

Townsend v. Kennedy, 6 S. D. 47, 60 N. W. 164. The rule has been thus well stated:

"It is immaterial in what form the memorandum is made, or whether it was ever delivered to the other or not, provided that, in itself, or by reference to other writings, it embraces all the essential elements of the contract. Nor is it material in what form the writing admitting the existence of a contract, a memorandum of which is signed by one party, is made by the other party. If it admits the contract, and refers to the memorandum in such a manner that the court can connect it therewith, and ascertain the terms of the contract without the aid of parol evidence, it is sufficient to bind him, although he did not intend thereby to ratify the contract. The moment written evidence of the contract, under his hand, in whatever form, exists, the contract is taken out of the statute, even though such admission is in the form of a letter repudiating the contract." Wood on Statute of Frauds, § 345, p. 651.

The original earnest money contract of sale, signed by both parties, was, in itself, a memorandum sufficiently explicit to satisfy the statute under ordinary circumstances. In the absence of special provision respecting the payment of the balance of the purchase price, the law would presume that it was to be paid in cash at the close of the transaction. However, the plaintiff, in its petition, has stated that other material terms were explicitly agreed upon, viz., the assumption of a mortgage of $13,500 by the defendant, and also the giving of a mortgage to secure the deferred payments aggregating $10,700. Having so stated the contract, it must be held to establish it as declared.

[3] The plaintiff contends that the defendant has not sufficiently pleaded the defense of the statute. This contention is untenable. It may now be accepted as settled by weight of authority that a party may admit an agreement not in conformity with the statute of frauds and yet avail himself of the defense by coupling with the admission a claim to the protection of the statute; and this is particularly true in those states where the statute makes the contract void and not merely voidable. American & English Enc. of Pleading & Practice, vol. 9, pp. 711, 712. The defendant has interposed a general denial. This operates to deny that any such agreement was made and puts the plaintiff to proof. Such a denial is as effective for letting in the defense as if the statute of frauds had been specially pleaded. May v. Sloan, 101 U. S. 231–237, 25 L. Ed. 797.

[4] The main insistence of the defendant is that the memorandum is defective, in that it does not provide: (1) A warranty deed from Pitts instead of from plaintiff; (2) that the defendant should execute a mortgage to secure the deferred payments, aggregating $10,700; (3) that the $13,500 mortgage should be assumed and should not fall due within a period of five years, or at least until after the maturity of the mortgage for $10,700 last mentioned. He also insists that plaintiff has not shown ability to perform the contract on its part, in that it depended upon payments from the defendant to enable it to discharge certain existing incumbrances upon the property. We are of opinion that the objection to the deed is not well taken. The contract provides that a warranty deed conveying a good title to said land must be tendered. It is not objected that the deed from Pitts did not carry such title. It is not necessary that the vendor should be the actual owner,

but only that he have an enforceable contract for the purchase, or that he stand in such relation to it that he can carry his contract into effect at the time specified. Gray v. Smith et al. (C. C.) 76 Fed. 525. Nor do we think it material that the plaintiff relied upon certain payments from defendant to enable it to remove certain incumbrances. If the ability of the plaintiff to make title were involved, if plaintiff could not secure the deed nor make conveyance without first obtaining money from the defendant, this criticism might have weight; but here the conveyance has been tendered. The rule invoked does not extend to the mere satisfaction of prior incumbrances by employing a part of the purchase money. These are mutual and contemporaneous steps in the performance of the contract. Such conditions are met with in the great majority of real estate transactions, and are not regarded as impairing the validity of contracts in which they inhere. Moreover, the correspondence recognizes this feature of the contract. It remains to be seen then whether, within the requirements of the statute, there was a sufficient memorandum embodying the entire contract, and a sufficient subscription by the defendant or his agent; because the defendant in this action is, of course, the party to be charged. Even though it were to be conceded that the subscription of both buyer and seller is necessary, it cannot well be claimed that that of the seller is wanting.

[5] The trial court was of opinion that the letters written by Breeden, defendant's agent, were inadmissible, as tending to disclose a written contract, because plaintiff had failed affirmatively to prove the agent's authority to be in writing subscribed by the defendant. The laws of Oklahoma (Rev. Laws 1910, § 4759) provide:

"In all actions, allegations of the execution of written instruments and indorsements thereon of the existence of a corporation or partnership or of any appointment or authority, etc., shall be taken as true unless the denial of the same is verified by the affidavit of the party, his agent or attorney."

In the petition Breeden is described as the duly authorized agent and attorney of defendant and as duly authorized by Harris to represent him in said transaction. These allegations are not denied under oath. The general allegation of an authorized agency will be presumed to be an agency with full powers legally conferred. The failure to deny under oath is equivalent to an admission in the answer. The law of the forum regulating the procedure is controlling. No further proof of the agent's authority was required. Mitchell v. Knudtson Land Company, 19 N. D. 736, 124 N. W. 946.

All other essential terms of the agreement being contained in the original memorandum (Exhibit A) which was subscribed by both parties, and the additional provisions respecting the assumption of the mortgage of $13,500, and the making of the mortgage securing deferred payments aggregating $10,700 by defendant, being disclosed in writings subscribed by plaintiff, it remains to be seen whether in the letters or other documents received or offered in evidence recognition or ratification of these terms by the defendant appears in writings subscribed by him; and in determining this we must look at all the correspondence and writings relating to this transaction which are

presented in the record, whether attached to the petition as exhibits or subsequently offered in evidence. Williams v. Smith, 161 Mass. 248–252, 37 N. E. 455.

Exhibit C, the letter of November 16, 1908, from the plaintiff to the First National Bank of Medford, Okl., in connection with the deed from Pitts, sets out the disputed terms of the contract with sufficient particularity. This letter, with its inclosures, was forwarded to the bank for defendant's inspection, and as an important step in the closing of the contract. On the same day plaintiff wrote defendant saying:

"We have this day sent to the First National Bank of Medford, Oklahoma, your notes, deed and a mortgage. Please call and execute mortgage and notes at your earliest convenience. Not knowing Mrs. Harris' name, we left that blank and instructed the bank to fill it in. We also left the county in which you live blank for them to fill in. All of these papers are drawn in accordance with our understanding. We have just received your letter and note what you say about the payments."

Four days before, November 12, 1908 (Exhibit E) Baird had written Harris inclosing to him nine abstracts covering the land in question. In this letter he referred to their agreement that the incumbrance of $13,500 should be left against the property. November 18, 1908 (Exhibit F), Harris wrote Baird as follows:

"I received the abstracts all O. K. Was glad to hear from you. I will send you my abstract in a few days."

This letter, written in response to plaintiff's letter of November 12th, gives implied assent to the mortgage of $13,500 as one of the terms of payment of the purchase price. Townsend v. Kennedy, 6 S. D. 47, 60 N. W. 164. But it may be said that the letters of November 16th to the First National Bank of Medford and to Harris, with their fuller recitals, had not yet been brought home to defendant because no reference is made to them. However, on November 24, 1908, the agent Breeden, having been employed by defendant to assist him in the transaction, wrote to plaintiff a letter in defendant's behalf. In the course of this letter he says:

"The abstracts show in addition to the $13,000 which grantee is to assume in mortgages that there are three other mortgages aggregating $9,643.24 on the land. Mr. Harris understands that you are to use the amount he is to pay on the notes executed at this time to remove or release this indebtedness, and I wish to know if that is correct."

Some additional details are then requested respecting the payment of taxes on the land and interest on the mortgage. That Harris was to execute a mortgage back for $10,700 is recognized as a part of the agreement; but some question is raised as to an insurance clause contained in it, and also respecting some embarrassment to Harris that might arise from the fact that the $13,500 mortgage would mature before that securing the deferred payments aggregating $10,700. This letter is a sufficient written recognition both of the $13,500 mortgage and the $10,700 mortgage as parts of the original agreement between the parties. Still further recognition is contained in Breeden's letters to Baird of December 4 and 5, 1908, in which the former seeks

to repudiate the contract. That of December 5th was admitted without objection.

[6] Plaintiff offered in evidence, as further tending to sustain the contract sued on, a bill in equity filed in the circuit court for the district of Oklahoma, in which Harris was complainant and the plaintiff in this case was defendant. This bill sought to set aside the contract here under consideration and to recover back the cash payment of $500 made thereunder. The bill is subscribed and sworn to by Harris. This offer was rejected by the trial court on the stated ground that the pleading was not signed in connection with the making of the contract. In this, we think the court erred. This was a pleading in a former case between the same parties; it was subscribed and verified by the party here charged; it did not set up the statute of frauds. The writings claimed to embody the contract were then in existence and were sufficiently referred to, and the pleading manifestly related to the same contract and transaction. In the bill it was stated that the contract was made as charged, including the agreement to assume the mortgage for $13,500 as a part of the purchase price, and to give back a mortgage to secure the deferred payments aggregating $10,700. This contract is sought to be avoided because of certain alleged fraudulent representations made by plaintiff herein respecting the time of maturity of the $13,500 mortgage, which Harris claims induced him to enter into the contract and agreement which was, in fact, made. Such a solemn and formal recognition and admission of a prior oral agreement is competent and admissible on both reason and authority. Brown on the Statute of Frauds (5th Ed.) § 354a; 20 Cyc. 254; Jones v. Lloyd, 117 Ill. 597, 7 N. E. 119.

It is true that in the former pleading, as in the present, the defendant Harris coupled his admissions respecting the contract with the claim that the plaintiff, through its president, Baird, induced him to enter into that contract through fraud and misrepresentation as to the time when the incumbrance which he was to assume would fall due; but this is a defense which has no relation to the statute of frauds. By implication it recognizes and presupposes the existence of the contract which is thus assailed as induced and tainted by fraud. The defendant contracted to assume a certain incumbrance. Let it be conceded that through fraud or inadvertence he failed to provide against some details of the assumption which worked to his disadvantage. He cannot invoke the statute of frauds for his relief. That statute thus interpreted would be made to work a revolution in the law of contracts apart from the evidentiary phase to which it is confined. It would become the vehicle by which the terms of written contracts might be varied upon the sole ground that they did not contain all the matters of detail which one of the parties afterwards desired them to contain. This is not the function of the statute. Defendant's remedy, if his cause is just, lies in other forms of procedure of the nature disclosed in his former bill and affirmatively stated in his answer filed herein.

"The statute does not say that if a written agreement is signed the same exception shall not hold to it that did before the statute. * * * It does not say that a written agreement shall bind, but that an unwritten agreement

shall not bind." Brown on the Statute of Frauds (5th Ed.) § 409; Glass v. Hulbert, 102 Mass. 24–35, 3 Am. Rep. 418.

With the question of ultimate recovery based upon other considerations it has nothing to do. Townsend v. Hargraves, 118 Mass. 325.

[7] We conclude then that under the pleadings and upon the evidence introduced, as well as that offered and rejected, as herein stated, the demurrer to the evidence should have been overruled.

It follows that the judgment below must be reversed, and the cause remanded, with directions to grant a new trial.

HOOK, Circuit Judge, concurs in result.