## CITY OF ARDMORE v. SAYRE.

No. 5176. Opinion Filed October 12, 1915.

Rehearing Denied January 25, 1916.

(154 Pac. 356.)

1. **OFFICERS—Removal of Appointee—Appointing Power.** Where an officer holding under appointment is guilty of malfeasance or maladministration in office, as a general rule the appointive power carries with it the inherent power of removal, unless prohibited by law.

2. **MUNICIPAL CORPORATIONS—Officers—Power to Remove.** Where a city charter provides for an officer known as city engineer of said city, and also provides that "said engineer shall be appointed by the mayor, by and with the consent of the board of city commissioners, and shall hold his office for a term of two years, unless sooner removed, as provided in this charter," and said charter contains no provision for the removal of officers, **held,** that the fact that the charter fails to provide for the removal of city officers is by implication an inhibition upon the power of the mayor and board of commissioners to remove the city engineer of such city from office.

3. **OFFICERS—"De Facto Officer."** An "officer de facto" is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where such duties and functions of the office are exercised by one who was in actual possession of it, under color of title.

4. **MUNICIPAL CORPORATIONS—Officers—"De Facto Officer"— Person Illegally Appointed.** Where one person is holding an office by legal appointment, and claiming to be such officer **de jure,** the mere fact that another person may take possession of said office, and perform some of the duties and functions of said office, under a pretended appointment by an officer or public board, or body acting against a plain provision of the statute, and with-

out any color of right, power, or jurisdiction to remove the de jure officer, or to appoint such pretending officer, such pretended appointee is not a de facto officer, for the reason that, under such circumstances, there cannot be two different officers, de jure and de facto, in possession of an office at the same time, where one incumbent only is provided by law.

5. OFFICERS—De Jure Officer—Right to Salary—Payment to Usurper. The rule that, where the salary of an officer is paid to a de facto officer, this defeats the right of the de jure officer to recover the legal salary of such office, does not apply to a mere usurper of said office or one pretending to hold such office without any color of title thereto.

6. PLEADING—Allegations not Denied Under Oath—Appointment and Authority of Officer—Admissions. In all actions allegations of appointment or authority of a public officer shall be taken as true unless the denial of the same be verified by the contending party, his agent or attorney, and such allegations will be construed as stating that such officer is a duly and regularly authorized officer, with full power, right, and authority to perform the duties and functions of such office; and the failure to deny such allegations under oath will be taken as an admission of the title to such office as alleged, with full power and authority to perform the duties and functions thereof.

(Syllabus by Robberts, C.)

*Error from District Court, Carter County;*

*S. H. Russell, Judge.*

Action by H. H. Sayre against the City of Ardmore. Judgment for plaintiff, and defendant brings error. Affirmed.

*F. M. Adams,* for plaintiff in error.

*Potterf & Walker,* for defendant in error.

Opinion by ROBBERTS, C. This action was commenced in the district court of Carter county by H. H. Sayre, defendant in error herein, against the city of Ardmore, plaintiff in error, to recover the sum of $1,500 alleged to be due him as one year's salary as city engineer of said city. On motion of plaintiff for judgment on the pleadings, the court rendered judgment against the city,

and in favor of the plaintiff, for the full amount claimed. For the facts involved we must depend entirely upon the pleadings. Therefore, in order to obtain a better understanding of the case, we will set out the pleadings in full, which are as follows:

"Comes now said plaintiff, leave of the court first being had and obtained, and files this, his first amended petition, and pleads as follows, to wit:

"(1) That during the times hereinafter mentioned, the city of Ardmore was, and has ever since continued to be, a municipal corporation of the State of Oklahoma, and duly incorporated under the laws governing cities of the first class.

"(2) That the city of Ardmore has what is known as a commission form of government, the elective officers of said city being mayor, together with four commissioners, who derive their authority from the charter of said city, which charter has been duly approved as by law required.

"(3) In addition to the elective officers provided for in said charter as aforesaid, the said charter further provides for an officer known as city engineer of said city, section 5, article 3, of said charter providing that he shall be appointed by the mayor by and with the advice and consent of the board of commissioners, and shall hold his office for a term of two years, unless sooner removed as provided in this charter; that, in pursuance of said authority, the mayor, on or about May 18, 1909, appointed this plaintiff city engineer of the city of Ardmore, and the said appointment was by the commissioners duly approved as by the charter provided; that by virtue of the said appointment the said plaintiff, Sayre, had a right to hold said position for the term of two years from the date of his appointment as aforesaid.

"(4) Plaintiff further states that on April 20, 1910, without any authority of law, or without any right or

color of right, and without any notice to this plaintiff, or without any charges being filed against him, James A. Cotner, then the mayor of the city of Ardmore, handed this plaintiff a notice in the form of a letter, announcing that this plaintiff was dismissed from the service of the city for insubordination, a copy of which letter is attached hereto, and made a part of this amended petition as Exhibit A; that upon receipt of this letter plaintiff at once wrote a letter to the then mayor, stating, in substance, that he did not recognize the authority of the mayor to dismiss him from office, a copy of which letter is hereto attached and made a part hereof as Exhibit B.

"(5) Plaintiff further states that subsequent to the date of the receipt of the notice from the mayor in which the said mayor attempted to usurp his official authority as set out in the preceding paragraph, that is to say, on the 25th day of April, 1910, the said mayor preferred charges in writing against the said plaintiff and announced that the matter would be heard at the city hall on the evening of April 27, 1910; that at the appointed time and place plaintiff was on hand protesting against the authority of the mayor and commissioners to expel him from his office as city engineer, without hearing one word of testimony, and in the face of the fact that the charter in no manner provides for removal of an appointive officer, and in no place, directly or indirectly, gives authority to the mayor and board of commissioners to remove an appointive officer, the said commissioners at said meeting on said date passed a resolution to the effect that it is the sense of the board of commissioners that they have power to suspend or dismiss any appointive officer at any time they deem such action expedient, a copy of which resolution is hereto attached and made a part hereof as Exhibit C.

"(6) Plaintiff further states that it is not within the power or authority of the mayor and board of commissioners to thus amend the charter of the city of Ardmore, it being provided in said charter that the citizens can

change the same on an initiative vote of the qualified electors of the city, and the said resolution was of no effect, and, as this plaintiff believes and alleges, was fraudulently passed by said board for the purpose of illegally delegating to themselves power and authority which they did not possess.

"(7) Plaintiff further states that immediately after the passage of the resolution made a part hereof as Exhibit C the board passed another resolution, a copy of which is attached hereto as a part hereof and marked Exhibit D, in which resolution they stated that on account of the proven inability of the present engineer, this plaintiff, to act in harmony with the mayor and commissioners, that said friction seems to be caused by the malicious interference of parties on the outside, which resolution was pure *dictum*, and not warranted by the facts as shown at said hearing, for the reason that in no way was any testimony offered to substantiate said allegations, the said resolution further requesting this plaintiff to tender his resignation; it being the intent of said resolution to say to said plaintiff in an indirect way that his services were no longer required by the city, and that it was the purpose of the board of commissioners to dismiss him by virtue of said resolution in the event the said plaintiff did not resign his office as city engineer on or before May 1, 1910.

"(8) That, notwithstanding this, plaintiff was legally in possession of and exercising the functions of the office of city engineer under and by provisions of the city charter of the city of Ardmore, and, without any warrant or right or law, the mayor and commissioners, at a meeting held at the city hall in the city of Ardmore on or about the 6th day of May, 1910, peremptorily undertook to dismiss this plaintiff from his office, and since that time has not recognized him as city engineer nor permitted him to perform his duties as such, and all this was done without the consent and over the objections of this plaintiff, and without any warrant of law, the said

plaintiff at that time and now contending that he is the legally qualified city engineer of the city of Ardmore, Okla., his office expiring May 18, 1911, according to the terms of said charter as aforesaid.

"(9) That since the action of the said mayor and commissioners wherein they delegated to themselves, without warrant of law, the right to declare the office of the city engineer vacant, this plaintiff, although legally entitled thereto, has not been receiving the emoluments of said office, which are the sum of $125 per month, which amount is payable monthly to this plaintiff.

"(10) Plaintiff states that at all times since the action of the mayor and board of commissioners as aforesaid he has resided in Ardmore, Okla., and has considered himself the legally qualified city engineer, and has been ready and willing to perform the duties of said office, but the said mayor and board of commissioners have not recognized him as city engineer nor permitted him to perform the functions of said office, and, as this plaintiff is informed, the said mayor and board of commissioners have not attempted to appoint any other person as city engineer since their action in which they attempted to remove this plaintiff as aforesaid.

"(11) Plaintiff further states that by virtue of his being city engineer as aforesaid he is entitled to the sum of $125 a month salary as aforesaid, and the same has not been paid to him since the 1st day of May, 1910; that the amount due him now at this date is for the 12 months beginning May 1, 1910, and ending April 30, 1911, that is to say, 12 months' salary, which amounts to $1,500.

"Wherefore plaintiff prays that he have judgment against the city of Ardmore for the said sum of $1,500, together with all costs herein expended."

The petition was duly verified. Attached to said petition, and marked Exhibit A, appears the following:

"Mr. H. H. Sayre, City Engineer, Ardmore, Oklahoma—Dear Sir: You are hereby dismissed from the service of the city of Ardmore for insubordination.

"JAMES A. COTNER, *Mayor.*

"JAC—OH."

Also attached to said petition, and marked Exhibit B, appears the following:

"ARDMORE, OKLA., April 20, 1910.

"Hon. Jas. A. Cotner, Mayor of Ardmore, Ardmore, Oklahoma—Dear Sir: I have your letter of even date herewith, in which you advise me that I am dismissed from the service of the city of Ardmore for insubordination.

"In reply, I beg to state that I do not recognize the authority of the mayor of the city of Ardmore to peremptorily discharge me without any action of the board of commissioners and without any opportunity for being heard in defense of myself.

"If I have been guilty of insubordination, I demand, as an American citizen, that I be presented with the charges against me and be given an opportunity to be heard in my defense.

"Until I am discharged by the board of commissioners, after a hearing in which I am allowed to defend myself, I shall consider that I hold the office of city engineer of Ardmore, and will act accordingly.

"Yours very truly,

"H. H. SAYRE, *City Engineer.*"

Also attached to said petition, and marked Exhibit C, appears the following:

"Be it resolved by the board of commissioners of the city of Ardmore that the right to suspend or dismiss any appointive officer or employee of the city goes with the power to appoint or employ, and it is the sense of the board that the commissioners of the city of Ardmore have

the power to do so at any time that they may deem such action expedient and necessary."

Also attached to said petition, and marked Exhibit D, appears the following:

"Whereas, on account of the proven inability of the present city engineer, H. H. Sayre, to act in harmony with the mayor and commissioners of the city of Ardmore; and

"Whereas, this friction seems to be caused by the malicious, unwarranted, and unauthorized interference of parties on the outside, who have not the best interests of the city at heart, by their influence have caused Mr. Sayre to become suspicious of the integrity of the mayor and rebellious in executing the wishes of the board, as expressed through the mayor, thereby rendering him [the engineer] unfitted to act in this capacity:

"Therefore be it resolved by the board of commissioners that Mr. Sayre is hereby requested to tender to the board of commissioners his resignation, same to take effect on the completion of this month's [April] services, and that this action is taken without prejudice in the premises.

"Passed and approved this 27th day of April, 1910.

"[Seal.]  [Signed]      JAS. A. COTNER, *Mayor.*

"[Signed]          G. H. BRUCE, *City Clerk.*"

Afterwards the defendant filed its general demurrer to the amended petition of the plaintiff, as follows:

"Comes now the defendant in the above styled and numbered cause and demurs to plaintiff's amended petition, and says that the same does not contain allegations sufficient to constitute a cause of action against it, either in law or equity, and of this it prays judgment of the court."

The trial court overruled the demurrer, to which action of the court the defendant excepted; and thereupon the defendant filed its answer, which is as follows:

"Comes now the defendant in the above styled and numbered cause, and without waiving its demurrer, but still insisting upon the same, says:

"(1) That it denies all and singular the allegations contained in plaintiff's petition, except those herein admitted.

"(2) That it admits that it is a municipal corporation, as is alleged in paragraph 1 of said petition, and that Exhibits A, B, C, and D of said petition are true copies of the instruments mentioned therein.

"(3) That it admits that on the 25th day of April, 1910, the mayor of the city of Ardmore preferred charges in writing against the said plaintiff and announced that the same would be heard on the evening of April 27, 1910, at which meeting the plaintiff asked for further time and for a copy of the charges against him, which charges were furnished him, and the same were heard at a subsequent meeting of the commissioners, and said plaintiff appeared in person and refused to give any testimony whatever in reference to whether or not he should be discharged as said engineer.

"(4) That on the 6th day of May, 1910, the mayor and board of commissioners of the city of Ardmore dismissed the plaintiff as its city engineer, which they had a lawful right to do, and passed a resolution dismissing him as such engineer, which resolution is hereto attached, made a part hereof, and marked Exhibit A. (See Exhibit D, plaintiff's petition.)

"(5) That since the plaintiff herein was dismissed as city engineer, to wit, on or about the 1st day of May, 1910, that L. J. Meyers has been both in law and in fact the duly qualified and acting city engineer and drawing the emoluments of said office, and has at all times since

said date exercised within the said city all the duties of said office of said engineer, performing all the work and duties that were performed by the plaintiff herein before his dismissal, and has made his reports to the commissioners of the city of Ardmore, and has received the salary of said office since said dismissal up to and until the 18th day of May, 1911, during all of which time he performed all the duties devolving upon the city engineer, and was recognized by the defendant herein as such officer and as performing all the duties, and was paid all the salary and emoluments of said office during said time, and the said plaintiff herein has not performed any of the duties whatever of said office during said time, and has not been in possession of said office from the date of his dismissal up to and until this time, but has been engaged in the general insurance business, and has earned more than $1,500 in said business during said period, and that during none of said time has the plaintiff been in the possession of the office of city engineer, but the said office has been in the possession of the said L. J. Meyers at all times since the 1st day of May, 1910, until he ceased to be said officer as alleged above.

"(6) That the income and revenue provided for the year ending June 30, 1911, has been exhausted, and there is no income or revenue for the year ending June 30, 1912, out of which plaintiff's claim could be paid, and there was no levy made for the same, and that at all times from May 1, 1910, to May 1, 1911, the outstanding indebtedness of the city of Ardmore in the aggregate exceeded 5 per cent. of the debt limit at and prior to the time that the plaintiff herein was appointed said engineer by the mayor and board of commissioners of the city of Ardmore, and the said city of Ardmore, while it especially denies that it is indebted to the plaintiff herein in any sum whatever, but in event it should be determined that it is under any obligation to the said plaintiff, then this defendant would show that it has no legal means under the law whereby it could raise money to pay any such indebtedness, for the reason that the 5 per cent. debt

limit has already been reached, as is hereinbefore alleged, and for that reason no judgment can be recovered against this defendant in this action.

"Wherefore, premises considered, defendant prays that it go hence without any day, and that it recover its costs herein expended."

Attached to said answer, and marked Exhibit A, is a copy of the same instrument as is attached to plaintiff's amended petition and marked Exhibit D.

Thereafter plaintiff filed his demurrer to defendant's answer, which was overruled, and exceptions preserved. The plaintiff then filed his reply to the defendant's answer, which was a general denial. The plaintiff thereupon filed a motion for judgment on the pleadings, which motion is as follows:

"Comes now the plaintiff, H. H. Sayre, and moves the court for a verdict on the pleadings in the above entitled cause, and as grounds for said motion states as follows, to wit:

"(1) Because the answer of the defendant filed herein admits every material allegation in plaintiff's petition, and under plaintiff's amended petition he is entitled to a verdict in this case.

"(2) Because, the office of city engineer under the law not being vacant by reason of the attempted discharge of this plaintiff, it is immaterial as to whether L. J. Meyers was appointed engineer or not, as this plaintiff was entitled to his compensation to the end of his term, and, if he was unlawfully deprived thereof, he is entitled to recover in this action.

"(3) Because the question of debt limit or the tax limit of the city of Ardmore has nothing whatever to do with this case, this not being an effort to recover by reason of a contract, and should not be considered in arriving at a verdict in this case."

The motion was sustained, and judgment rendered for plaintiff in the sum of $1,500, as above stated, to which defendant excepted. Motion for new trial was overruled, exceptions preserved, and defendant brings error.

Counsel for the city presents several assignments of error, but in his brief submits but two propositions, which are as follows:

First. "The trial court erred in overruling the defendant's demurrer to the plaintiff's petition."

Second. "The court erred in sustaining the motion of plaintiff for judgment on the pleadings."

The first contention of counsel under the assignment that the trial court erred in overruling defendant's demurrer to the petition is:

"That the petition does not disclose that H. H. Sayre was the qualified and acting engineer of the city of Ardmore."

This insistence cannot be sustained, for the reason that by reference to the petition we find it is alleged in paragraph 3 that:

"The mayor, on or about May 18, 1910, appointed this plaintiff city engineer of the city of Ardmore, and the said appointment was by the commissioners duly approved, as by the charter provided."

And in paragraph 7 it is alleged that:

"Plaintiff was legally in possession of and exercising the functions of the office of city engineer under and by the provisions of the charter of the city of Ardmore."

This is certainly a plain allegation of appointment, qualification, and possession, and also an allegation of claim of right to hold the office. These allegations also answer the contention of counsel that:

"Before a person claiming to have been ousted from a public office can recover his damages, that is, loss of salary and emoluments of office, he must first establish his title to the office as provided by law."

What more would counsel want, or what more could he ask? Here is an allegation of appointment, qualification, possession, and performance of duty. Counsel states, and we think, correctly, that:

"The law presumes that the rightful holder of an office is in the rightful possession of the same, and entitled to the emoluments thereof."

Under the allegations above stated, which were duly verified, and not denied under oath, the plaintiff was the rightful holder, and in possession of the office, and entitled to the salary and emoluments.

Under section 4759, Rev. Laws 1910, which was in force at all times referred to herein:

"Allegations of any appointment of authority shall be taken as true unless the denial of the same be verified by the affidavit of the party."

Besides, it must not be overlooked that the right to the salary of a public officer does not depend upon the performance of duty as such officer. If so, official salaries would be very uncertain.

As stated by Judge Dillon in his great work on Municipal Corporations (5th Ed.), sec. 425:

"In the case of officers the compensation—usually a salary—is attached to the office as an incident, and is not dependent upon the performance of actual service, while the salary or compensation of an employee is intended as remuneration for services actually rendered."

As stated in *Carroll v. Sibenthaler*, 37 Cal. 195:

"The principle that the salary annexed to a public office is incident to the title to the office, ·and not to its occupation and exercise, was affirmed in *Dorsey v. Smyth,* 28 Cal. 21, and *Stratton v. Oulton,* 28 Cal. 44. The petitioner having been elected and qualified, and being ready and willing to enter upon the discharge of the duties of his office, became entitled to the salary attached to the office, and his right to the salary was unaffected by the fact that an usurper discharged the duties of the office."

Sections 4920 and 4925, Rev. Laws 1910, referred to by counsel, have no bearing in this case. These sections refer exclusively to proceedings in the nature of *quo warranto.* This is plainly and solely an action to recover money due from the city to the plaintiff for salary as city engineer. The original petition evidently contemplated. an action in the nature of *quo warranto,* but that proceeding was abandoned by the amended petition, and the cause based entirely upon an action against the city to recover money due for salary. No objection was made to this change of cause of action, nor to the party defendant. The city appeared, demurred to the petition, and, upon that being overruled, answered without protest or objection. The original case was abandoned, a new and different defendant substituted, and the cause of action changed without objection, and, in fact, apparently by the consent of the city.

We are now brought to the second assignment of error, wherein counsel for the city contends that the trial court erred in sustaining the motion of plaintiff for judgment on the pleadings. In support of this specification counsel submits three propositions:

(1) That the answer presents a substantial issuable fact, which requires testimony to determine the rights of

the parties. We do not so understand the issues. As stated before, the petition alleges, in substance, that plaintiff is, and at all times was, the duly elected, qualified and acting city engineer, that he has at all times resided in the city, and considered himself the legally qualified city engineer, and has at all times been ready and willing to perform the duties of said office, but said mayor and board of commissioners have not recognized him as such officer, nor permitted him to perform the duties of said office, and that said mayor and board of commissioners have not attempted to appoint any other person as city engineer since their action in which they attempted to remove plaintiff from office. All these allegations go to the appointment and authority of plaintiff to hold the office of city engineer. They are made under oath, and not denied by the oath of defendant, its agent or attorney, and therefore must be taken as true. As stated in *Baird Inv. Co. v. Harris,* 209 Fed. 297, 126 C. C. A. 217:

"The failure to deny under oath [in such cases] is equivalent to an admission in the answer. The general allegation of an authorized agency [appointment of authority in this case] will be presumed to be an agency [authority] with full powers legally conferred."

It is apparent that no issues of fact are presented in the pleadings.

(2) He further contends that one L. J. Meyers has been, since the 1st day of May, 1910, both in law and in fact, the duly qualified and acting city engineer, and is drawing the emoluments of his office, and has at all times since said date exercised within said city all the duties of said office of city engineer, and has made his reports to the commissioners of said city, as such engineer, and further alleges that plaintiff has not been in

possession of said office from the date of his dismissal, but has been engaged in other business, and has earned more than $1,500 in said business during said time, and, further, that the revenue for that year has been exhausted, and there is no revenue or provision for the payment of the plaintiff's claim or judgment if obtained. This allegation is, no doubt, made for the purpose of attempting to show that Meyers is in possession of and performing the duties of said office, and is therefore a *de facto* officer; but this contention cannot be sustained, for the reason: (a) That the answer is not verified, and cannot be considered against the verified petition of plaintiff alleging appointment and performance of duties of the office. *Baird Investment Company v. Harris, supra.* This doctrine is laid down in *Mitchell v. Knudston*, 19 N. D. 736, 124 N. W. 946, in the following language:

"The allegation that Knudston was the 'duly and authorized agent of the Knudston Land Company' should be construed as stating that he was a duly and regularly authorized agent of said company for all purposes in connection with the transaction set forth in the complaint. By admitting such allegation to be true, it must be admitted to be an admission of such agency with full authority in the premises. This court has recently held that an allegation in a complaint that a contract was entered into between parties will be presumed to be a legal contract and in writing, if a written contract is necessary for the purposes of the contract. *Hanson v. Svarverud* [18 N. D. 550], 120 N. W. 550. The same principle is applicable here. The general allegation of an authorized agency will be presumed to be an agency with full powers legally conferred."

These decisions are based upon statutes which provide:

"In all actions, * * * allegations of any appointment of authority shall be taken as true, unless the denial of the same be verified by the party, his agent, or attorney." (Section 4759, Rev. Laws 1910.)

It requires no argument to show that defendant cannot admit in one breath that plaintiff is the duly appointed officer, attempting to perform the duties of his office, and deny it in the next. It is well settled upon reason and by numerous authorities that two persons cannot occupy one office at the same time, one as a *de facto*, and the other a *de jure*, officer. Under these facts, as alleged in the petition, and admitted by the answer, Meyers has no standing or rights as a *de facto* officer. The definition of a *"de facto* officer" as given by counsel for plaintiff in error, taken from *Ex parte Crump,* 10 Okla. Cr. 133, 135 Pac. 428, is as follows:

"An 'officer *de facto*' is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the duties and functions of the office are exercised by one who was in the actual possession of it under color of title."

The modification of the possession and occupancy of the office by the phrase "who was in possession of it under color of title" is controlling in this case. Here the city was operating under what is known as a freeholders' charter. The petition alleges:

"The charter provides for an officer known as city engineer of said city, and section 5, article 3, of said charter provides that he shall be appointed by the mayor, by and with the advice and consent of the board of commissioners, and shall hold his office for a term of two years, unless sooner removed as provided in this charter."

It is admitted that the charter contains no provision for the removal of the city engineer from office. The question now presented is whether the power or authority of the mayor to appoint carried with it the power of removal. Such seems to be the general rule adopted in this state, unless prohibited by statute. The rule laid down in *Cameron v. Parker,* 2 Okla. 277, 38 Pac. 14, is as follows:

"If the officer is guilty of malfeasance or mal-administration in office, it is within the power of the appointing power to remove him, unless expressly prohibited by law."

The same doctrine was announced in *Ewing v. Turner,* 2 Okla. 94, 35 Pac. 951.

The question now is: Does the charter prohibit the removal by the appointing power? We are of the opinion that it does. The language of the charter is positive that "he shall hold his office for a term of two years, unless sooner removed as provided in this charter," and no provision for the removal is provided in the charter. This, to our mind, is a clear inhibition on the right or power of the mayor and board of commissioners to remove. It follows, therefore, as a natural corollary, that the action of the mayor and board in that behalf was not merely voidable, but absolutely void, and in consequence thereof their action in attempting to appoint another city engineer was also void, and did not carry with it even a color of title to the office.

In *Cameron v. Parker; supra,* 2 Okla. at page 297, 38 Pac. at page 21, the court says:

"As a matter of course, the court must necessarily be governed by the law conferring upon the Governor the power of removal. If the court should determine that

the Governor had unlawfully exercised his power of removal, or possessed no such power under the law, it could not hold that the plaintiff had, under the law, either an absolute or *prima facie* title; or, if the court should hold that the Governor had no power or authority to appoint an officer without the advice and consent of the council, under the law it could not hold that the plaintiff had either an absolute or a *prima facie* title thereto."

It would seem from the foregoing that whatever Meyers may have done, he was acting simply as a usurper, and his rights, if involved, would be determined as such. Nor do we intend to intimate that he was acting in bad faith.

Counsel further insists that, the city having paid Meyers for his services as city engineer, it is not liable to the plaintiff for his salary, and base their contention on the case of *Stearns, Mayor, v. Sims,* 24 Okla. 623, 104 Pac. 44, 24 L. R. A. (N. S.) 475, wherein the following language is used:

"Where a *de jure* chief of police is, pending suit on charges against him in the district court, wrongfully suspended by order of the judge thereof at chambers, which said order is later set aside and said suit dismissed, and where said city pays a chief of police *de facto*, during his incumbency, the salary provided by law, said officer *de jure,* after obtaining possession of the office, cannot recover from the city the salary for the same period."

That case does not sustain the contentions of counsel, for the reason that it involves the question of payment to a *de facto* officer—one who held *colore officii.* In the instant case the pretended appointment, being absolutely void, made without even a color of power or right, was simply a nullity. As said by Justice Campbell in *Wayne County v. Benoit,* 20 Mich. 176, 4 Am. Rep. 387:

"There is a distinction taken by many authorities between an office held *de facto* under color of title, and one usurped without any legal pretext."

The case of *Stearns, Mayor, v. Sims, supra,* is distinguished from the instant case in this: That in the case cited, holding that the *de jure* officer could not recover from the city where the salary had been paid to the *de facto* officer, the *de jure* officer had been suspended by the district court as provided by law, and the *de facto* officer appointed by the legal appointing power. There was no question of jurisdiction either in the power of the court to suspend or in the power to fill the vacancy during suspension. The temporary officer was clearly a *de facto* officer. It would certainly be extending the doctrine to a dangerous point to say that an officer could be displaced by a power or body without any colorable right or jurisdiction, and another person placed in the position, and the salary paid to the pretended officer, and thereby defeat the regular officer of his right to recover his salary from the paying body, especially where the pretended, wrongful removal is made by the same power that is responsible for the payment. The answer does not even allege that the full or regular salary was paid to Meyers. It simply says, in substance, that he received payment, but does not state the amount. But that is immaterial. He was not entitled to any of it. He could not possibly have taken the first step to recover it by establishing his title to the office. Judge Cooley, in his dissenting opinion in *Auditors of Wayne County v. Benoit,* 20 Mich. 176, 192, 4 Am. St. Rep. 382, having involved a somewhat similar question, uses the following language:

"The only case directly in point is that of *People v. Smyth,* 28 Cal. 21, and there it was held that the law-

fully elected officer, who had been excluded by one coming in by color of title, might, after recovery of the office, maintain an action against the county for his salary during the usurpation, notwithstanding it had been previously paid to the usurper. This decision appears to me to be sustainable on the soundest reasons of public policy. A wrong is done to society and public order in every instance in which the usurpation of a public office takes place; and the rules of law ought to be such as to give the greatest possible discouragement to such a proceeding. The county authorities, in a case like this, ought not to be told that they may countenance the intrusion with impunity, and deliver over to a usurper the emoluments of an office to which he has neither a legal nor a moral claim. Such a rule encourages usurpations, and tends to lower the standard of public morality. Public policy requires that municipal officers should be allowed to sanction or recognize the intrusion only so far as may be necessary to give the public the full benefit of protection which the rule regarding the acts of officers *de facto* was designed to afford."

From a careful consideration of the entire record, we are of the opinion that the case should be affirmed.

By the Court: It is so ordered.