DUAL OFFICE HOLDING — LEGISLATOR A member of the Legislature, who is elected to the Board of Directors of the Oklahoma Historical Society, in the manner prescribed in the Society's constitution, is not prohibited from serving as a member of the Board by virtue of 51 O.S. 6 [51-6] (1971), or Article V, Section 23 of the Oklahoma Constitution; however, under the separation of powers provision contained in Article IV, Section 1 of the Oklahoma Constitution, a legislator is disqualified from serving as a member of the Board of Directors of the Oklahoma Historical Society. The position of any present member of the Board of Directors of the Oklahoma Historical Society, who is disqualified from serving, would become vacant; however, previous acts performed by such director would be valid since such director would have been a de facto officer. The Attorney General has considered your request for an opinion where you ask, in effect, the following question: May a member of the Oklahoma Legislature legally serve on the Board of Directors of the Oklahoma Historical Society? For purposes of this opinion, we assume that the member of the Legislature commenced service on the Board of Directors of the Oklahoma Historical Society subsequent to becoming a legislator. It is generally provided in 51 O.S. 6 [51-6] (1971), that no public officer shall hold a second office, except as may otherwise be provided by the Legislature. Title 51 O.S. 6 [51-6] (1971), reads as follows: "Except as may be otherwise provided, no person holding an office under the laws of the State and no deputy of any officer so holding any office, shall, during the term of office, hold any other office or be the deputy of any officer holding any office, under the laws of the State. Provided, that the provisions of this Section will not apply to notaries public and members of the Textbook Commission." It has been held that a public officer is an individual invested with some portion of the sovereign power or function of government. Oklahoma City v. Century Indemnity Company,62 P.2d 94 (1936); Sparks v. Board of Library Trustees of Carter County, 169 P.2d 201 (1946). It would, therefore, appear that the provisions of 51 O.S. 6 [51-6] (1971), would be applicable to the present question unless the Legislature has "otherwise provided". An analysis of the statutory provisions relating to the Oklahoma Historical Society, its Board of Directors, members and authority to adopt rules and regulations by means of its constitution and by-laws, discloses that the Legislature has "otherwise provided". The Oklahoma Historical Society became an instrumentality of Territory of Oklahoma in 1895. See, Chapter 27, Session Laws of the Oklahoma Territory of 1895. Section 6 of Title 51, relating to dual office holding, was adopted from the Revised Laws of 1910 in substantially the same form as it exists presently. In 1937 the Legislature enacted the present provisions of 53 O.S. 1971 16 [53-16], 17, and 18. See, Oklahoma Session Laws 1937, pages 99 and 100. Section 16 of that Title reads as follows: "The Board of Directors of the Oklahoma Historical Society, consisting of not more than twenty-five (25) members, also with the Governor as an ex officio member, as now constituted, are hereby declared to be agents of the State of Oklahoma, and to hold as such directors until their successors are elected and qualified." Section 17 of that Title reads as follows: "The members of said Society are hereby declared to be those who have heretofore become and are now members of said Society, and such others as may be admitted and elected as members thereof, in accordance with its constitution and by-laws, and are to continue as members thereof in accordance with the terms of said Constitution and by-laws as it may be amended in accordance with its terms or by Act of the Legislature." The pertinent portions of Section 18 of that Title read as follows: "The said Oklahoma Historical Society is hereby declared to be such organized agency of the State of Oklahoma and to have been such since the erection of the State of Oklahoma, with power to formulate and adopt rules and regulations by means of its constitution and by-laws, and resolutions for its government and regulation subject to the laws of the State. . . ." Under the foregoing provisions of Title 53, the Legislature has authorized the Oklahoma Historical Society to have a board of directors as was constituted in 1937, to admit and elect members to the society in accordance with the manner prescribed in the Society?s constitution and by-laws and to formulate and adopt rules and regulations relating to the Society by means of the Society's constitution and by-laws. Pursuant to this express statutory authority, the constitution of the Oklahoma Historical Society prescribes rules of membership and the method of electing members of the Board from the membership. Concerning memberships, Section 1, Article II of the Society's constitution provides for annual, life and honorary membership. Concerning the manner of electing members to the Board of Directors, Section 2 of Article V of the Society's constitution provides as follows: "Members of the Board shall be elected for a term of five years until their successors have been elected. Directors shall be elected only from among those persons who have been annual or life members of the Society for not less than three years prior to their nomination." In addition, Section 3 of Article IV of the Society's constitution provides in part as follows: "Five members of the Board of Directors shall be elected annually by ballot by members of the Society in the following manner. . . ." It also appears pertinent to this question that at the time of the adoption of 53 O.S. 16 [53-16], 53 O.S. 17 [53-17] and 53 O.S. 18 [53-18] (1971), which became effective on May 22, 1937, two members of the Legislature, A. N. Leecraft and W. J. Peterson, were in fact serving on the Board of Directors of the Oklahoma Historical Society. See, Minutes of the Meeting of the Board of Directors. of the Oklahoma Historical Society, January 28, 1937, and July 29, 1937, Vol. 15, Chronicles of Oklahoma, Nos. 1 and 3, pages 121 and 355 (1937). Since its inception as a state agency until the present time, we are advised that it has been the practice of the Society to have a member of the Legislature on the Board of Directors. In construing the specific provisions of 53 O.S. 1971 16 [53-16], 17, and 18 in light of the provisions of 51 O.S. 6 [51-6] (1971), it is appropriate to consider the contemporaneous circumstances and events which existed at the time of the enactment of Sections 16, 17, and 18 of Title 53. Sheridan Oil Co. v. Superior Court of Creek County, 82 P.2d 832 (1938); In re Martins Estate, 80 P.2d 561 (1938); and Russett School District No. C-8 of Johnston County v. Askew, 141 P.2d 575
(1943). It would, therefore, follow that by enacting 53 O.S. 16 [53-16], 53 O.S. 17 [53-17] and 53 O.S. 18 [53-18] (1971), authorizing the Board of Directors of the Oklahoma Historical Society, as constituted in 1937, to serve as the governing body of that Society, and authorizing the admittance and election of members to the Society in accordance with the Society's constitution and by-laws, and authorizing the Society to formulate and adopt rules, and regulations for its government by means of its constitution and by-laws, the Legislature has "otherwise provided" within the meaning of 51 O.S. 6 [51-6] (1971), and the same would constitute an exception to the dual office holding prohibition under the express terms of 51 O.S. 6 [51-6] (1971). Thus, we do not find that service on the Board of Directors of the Oklahoma Historical Society by a legislator is prohibited by 51 O.S. 6 [51-6] (1971). Article V, Section 23 of the Oklahoma Constitution, relating to election or appointment of legislators to other offices, does not appear to be applicable to this question. It provides as follows: "No member of the Legislature shall during the term for which he is elected, be appointed or elected to any office or commission of the State, which shall have been created, or the emoluments of which shall have been increased, during his term of office, nor shall any member receive any appointment from the Governor, the Governor and the Senate, or from the Legislature during the term for which he shall have been elected, . . ." We do not find any provision of law authorizing any salary or compensation to members of the Board of Directors of the Oklahoma Historical Society, nor are such members, as stated above, appointed by the Governor, the Governor and the Senate, or by the Legislature. Article IV, Section 1 relating to separation of powers, would appear to be applicable to this question. It provides as follows: "The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial Departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others." The principle of separation of powers has always been one of the basic tenets of the American system of government, however, complete separation of the three branches does not exist. In Kilbourn v. Thompson, 103 U.S. 168,26 L.Ed 377 (1880), the United States Supreme Court expressed the following at page 190 of the Opinion concerning separation of powers: "It is believed to be one of the chief merits of the American system of written constitutional law, that all the powers entrusted to government, whether State or national, are divided into three grand departments, the executive, the legislative, and the judicial, That the functions appropriate to each of these branches of government shall be vested in a separate body of public servants, and that the perfection of the system requires that the lines which separate and divide these departments shall be broadly and clearly defined. It is also essential to the successful working of this system that the persons entrusted with power in any one of these branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other." As to the specific question of whether or not the separation of powers provision would disqualify a member of the Legislature from serving on the Board of Directors of the Oklahoma Historical Society, we find no Oklahoma cases directly in point. However, in Simpson v. Hill, 263 P. 635 (1927), the Oklahoma Supreme Court in the third Syllabus stated as follows: "Article 4 of the Constitution divides the departments of state government into legislative, executive, and judicial the last clause providing: 'And neither shall exercise the powers properly belonging to either of the others.' This is an inhibition against the Legislature, or any members thereof, undertaking to perform a prerogative given by the Constitution to another department of state government." The Simpson case, supra, involved the Legislature calling itself into an extraordinary session, which authority is expressly granted to the Governor as the chief executive officer of the State. In the recent case of Greer v. State, 212 S.E.2d 836 (Ga. 1975), the Georgia Supreme Court passed upon the question of whether or not members of the Georgia General Assembly could serve on the governing body of the World Congress Center Authority, an instrumentality of the State. In the Greer case, supra, the Court held that members of the Georgia General Assembly were disqualified from serving on the governing body of the World Congress Center Authority under the separation of powers provision in the Georgia Constitution. In that case it was contended that the Authority was a special instrumentality of the state government outside of the three traditional branches. The Court in that case found that the Authority implemented and administered specific legislation and, therefore, did in fact perform an executive function of state government. In holding that a legislator could not serve on the governing body of the "World Congress Center Authority", the Court stated at page 838 of the Opinion as follows: "Appellants' argument is that there is no constitutional defect in this arrangement. Carried to its logical extreme, this arrangement would permit the General Assembly to appoint an ad hoc committee of its own members to implement specific legislation. The case at bar does not present such a logical extreme, but it evidences the same constitutional infirmity. We have to conclude that a legislator who participates as a member of the governing body of a public corporation such as the World Congress Center Authority is performing executive functions." In Book v. State Office Building Commission, 149 N.E.2d 273
(Ind. 1958), the Supreme Court of Indiana held that under the separation of powers provision of the state constitution, members of the state legislature were disqualified from serving as members of the State Office Building Commission. In the Book case, supra, the Court stated that, "The Legislature may enact, but it cannot execute laws." Further, in State, ex rel. State Building Commission v. Bailey, 150 S.E.2d 449 (W.Va. 1966), the Supreme Court of Appeals of West Virginia held that members of the Legislature cannot constitutionally exercise or perform executive or administrative powers and duties. In this case, the governing body of the particular State Commission in question consisted partially of members of the Legislature and the Court found that such Commission did perform- executive and administrative functions in that it implemented and carried out specific legislative enactments. From the foregoing authorities, it is clear that under the separation of powers provision a member of the Legislature is disqualified from exercising or performing executive or administrative powers and duties of state government. It has been held, however, that under the separation of powers provision members of the Legislature are not disqualified from serving on a board, commission or other body whose functions are advisory or fact finding rather than the implementation, execution or carrying out of specific legislation, Parker v. Riley, 113 P.2d 873 (Cal. 1941). The California Supreme Court, in the Parker case, supra, held that it did not violate the separation of powers provision in the California Constitution for legislators to serve as members of the California Commission on Interstate Cooperation since such Commission was designed to further cooperation between various states and between the states and federal government through the exchange of information and the formulation of proposals for mutual action to be submitted to their individual state government. In the Parker case, supra, the California Court held that these functions of the Commission were not executive functions of state government but were rather akin to the legislative functions of fact finding or information gathering ancillary to enactment of legislation. Looking at the functions performed by the Oklahoma Historical Society, 53 O.S. 1 [53-1] (1971), provides that the Society shall expend state money for the uses and purposes directed by law, Section 53 O.S. 2 [53-2] of that Title imposes on the Society the duty of collecting books, maps and other papers and materials illustrative of Oklahoma history, and Section 2A of that Title provides, in part, as follows: "(1) a. The Oklahoma Historical Society shall hereinafter have the authority to acquire by gift, devise, purchase or otherwise, absolutely or in trust, and to hold and, unless otherwise restricted by the terms of the gift or devise, to encumber, convey or otherwise dispose of any real property or real estate or other interest therein as may be necessary in carrying into effect the purpose of this Act. "b. Authority is hereby granted to the Oklahoma Historical Society to enter into contracts and to execute all instruments necessary to fulfill its duties, respecting the protection. preservation, maintenance and/or operation of such historic buildings, sites and/or objects as it may select. "c. To correlate and preserve drawings, plants, photographs and other data of historic and archaeologic sites, buildings and objects. "d. To make surveys of historic and archaeologic sites, buildings and objects for the purpose of determining which possesses exceptional value as commemorating and/or relating to the history of Oklahoma. "e. Make necessary investigations and research in Oklahoma relating to particular sites, buildings or objects to obtain true and accurate historical and archaeological facts and information concerning the same. "f. Contract and make co-operative agreements with municipalities, corporations, associations and individuals, with proper bond where deemed advisable to protect, preserve, maintain or operate any historic or archaeologic building, site, object or property used in connection therewith for public use, regardless whether the title thereto is in the State of Oklahoma; provided, that no contract or co-operative agreement shall be made or entered into which will obligate the general fund of the State Treasury unless or until the legislature has appropriated sufficient monies for such purpose. "g. Restore, reconstruct, rehabilitate, preserve and maintain historic or prehistoric sites, buildings, objects and properties of historical and archaeological significance and where deemed desirable establish and maintain museums in connection therewith. "h. Operate and manage historic and archaeologic sites, buildings and properties acquired under the provisions of this Act, together with lands and subordinate buildings for the benefit of the public, such authority to include the power to charge reasonable visitation fees and grant concessions, leases or permits for the use of land, building space, roads or trails when necessary or desirable either to accommodate the public or to facilitate administration; provided, that such concessions, leases or permits shall be granted only after competitive bids to the person making the highest and best bid. "i. When the Oklahoma Historical Society determines that it would be administratively burdensome to restore, reconstruct, operate or maintain any particular historic or archaeologic site, building or property donated to the State, it may cause the same to be done by organizing a corporation for that purpose under the laws of the State of Oklahoma. "j. Develop an education program and service for the purpose of making available to the public facts and information pertaining to Oklahoma historic and archaeologic sites, buildings and property of State significance. Reasonable charges may be made for the dissemination of any such facts or information. "(2) There is hereby created in the State Treasury of the State of Oklahoma a revolving fund to be designated as the Historic Sites Revolving Fund, which shall consist of all money appropriated to said fund and all money received by the Oklahoma Historical Society from the leasing of concessions at historic sites under the control and operation of said Oklahoma Historical Society, and from the acceptance of gifts and devises for the benefit of such fund from whatever source derived. Said Revolving Fund shall be under the control and management of the Oklahoma Historical Society and disbursements therefrom shall be made on claims approved by the Board of Directors of the Oklahoma Historical Society. The State Budget Director shall draw warrants payable by the State Treasurer in payment of all claims against the Historic Sites Revolving Fund herein created, after such claims have been properly audited and approved for payment, as provided by law. . . ." It is clear from the foregoing statutes, relating to the Oklahoma Historical Society, that the Society exercises an executive function of state government in that it implements and carries out specific legislation. A member of the Legislature would, therefore, be disqualified from serving on the Board of Directors of the Oklahoma Historical Society, and the position of any present director, who is a member of the Legislature, would become vacant. Previous acts performed by such director would, however, be valid since such director would have been a de facto officer. See City of Ardmore v. Sayre, 154 P. 356 (1916); Hatfield v. Jimerson,365 P.2d 980 (1961), and Ajax Contractors, Inc. v. Myatt,424 P.2d 30 (1967). It is, therefore, the opinion of the Attorney General that your question be answered as follows: A member of the Legislature, who is elected to the Board of Directors of the Oklahoma Historical Society, in the manner prescribed in the Society's constitution, is not prohibited from serving as a member of the Board by virtue of 51 O.S. 6 [51-6] (1971), or Article V, Section 23 of the Oklahoma Constitution; however, under the separation of powers provision contained in Section 1, Article IV of the Oklahoma Constitution, a legislator is disqualified from serving as a member of the Board of Directors of the Oklahoma Historical Society. It is the further opinion of the Attorney General that the position of any present member of the Board of Directors of the Oklahoma Historical Society, who is disqualified from serving, would become vacant; however, previous acts performed by such director would be valid since such director would have been a de facto officer. (Gerald E. Weis)