Dear Senator Monson:
¶ 0 This office has received your request for an official Attorney General Opinion addressing, in effect, the following questions:
 1. May the Governor unilaterally alter the executive Cabinet after its creation?
 2. May a nominee who has been rejected previously for a Cabinet post be renominated for appointment to the same or a slightly altered post?
 3. Is a person entitled to serve as a Cabinet secretary on an acting or interim basis if the letter nominating him to the permanent post does not expressly indicate that the person is to serve on an acting or interim basis?
 4. Is a person who has not been appointed to a Cabinet position on an acting or interim basis entitled to enter upon the duties of that position and receive any compensation?
¶ 1 According to the information you provided, your questions arise from a situation in which the Senate rejected the Governor's nominee for Cabinet secretary of commerce.[1]
Following this rejection, the Governor, acting by executive order, purportedly abolished the secretary of commerce position and created a new position entitled secretary of economic development and special affairs in the Cabinet. The Governor then appointed the candidate who had been rejected for the secretary of commerce position to the new post.[2]
¶ 2 The new position has responsibility for seventeen of the twenty-one areas that the secretary of commerce had plus three the commerce secretary did not have before: Black Advisory Task Force, Human Rights Commission, and Office of Minority and Disadvantaged Business Enterprises. These three were formerly under the secretary of administration. The four areas that had been under the secretary of commerce that are not under the new position are the East Central Gas Authority and North
¶ 3 Central Oklahoma Municipal Power Pool Authority, which were moved to the secretary of energy; Northeast Oklahoma Public Facilities Authority, which was moved to the secretary of administration; and Lone Chimney Water Association, which was moved to the secretary of environment. Compare Exec. Order No. 95-8 and Exec. Order No. 2000-11.[3]
I. Modification of Cabinet
¶ 4 The Oklahoma Constitution does not create or prohibit the creation of an executive Cabinet; instead, the Governor's Cabinet is a creature of statute, specifically the Executive Branch Reform Act of 1986, (the "Act"). See 74 O.S. 1991 and Supp.1999, §§ 10.1-10.5. The judiciary has not interpreted the Act, but the statutory language is straightforward and relatively easy to decipher.
¶ 5 Under the Act, each Governor must create a Cabinet system for the executive branch within forty-five days of taking the oath of office. See 74 O.S. 1991, § 10.3[74-10.3](A). That Cabinet must be divided into no fewer than ten areas and no more than fifteen. See id. The Governor must include a secretary for veterans affairs in the Cabinet, but otherwise the group may include any positions the Governor desires, within the numerical parameters set by the Legislature.[4] See id. The secretary for veterans affairs must deal with the Department of Veterans Affairs and "other related veterans entities" and may be responsible for other agencies as the Governor selects. Id. § 10.3(B). The other Cabinet secretaries are responsible for agencies, boards, and commissions as the Governor chooses. Seeid. § 10.3(A). After the forty-five-day creation period, the Cabinet may be altered by the Legislature, but the Act contains no similar power for the Governor to change the Cabinet after the creation period:
 Within forty-five (45) days of assuming office, each Governor shall create a cabinet system for the executive branch of state government. Said cabinet system shall be an organizational framework created by executive order which includes all executive agencies, boards, commissions, or institutions and their assignments to specific cabinet areas. The cabinet system shall consist of no fewer than ten or more than fifteen cabinet areas and each cabinet area shall consist of executive agencies, boards, commissions, or institutions with similar programmatic or administrative objectives; provided, one cabinet area shall consist of the Oklahoma Department of Veterans Affairs, its institutions and other executive agencies, boards, commissions and institutions which are related to veterans. The Governor's cabinet shall be in effect until the Legislature supersedes each cabinet area by providing by law for specific cabinet areas or departments, or removes by law the authority of the Governor to create a cabinet area.
Id. (emphasis added).
¶ 6 By the express terms of the statute, after creation the Cabinet continues until the Legislature changes it. Following the forty-five-day creation period, therefore, the Governor may not abolish Cabinet positions, create new positions, or modify either the titles or areas of responsibility of existing Cabinet positions. Such power is reserved to the legislative branch by the Act's unambiguous terms. See id.
 II. Resubmission of Rejected Candidate
¶ 7 The Oklahoma Constitution does not address the mechanics of submitting gubernatorial appointments to the Senate for confirmation and is, therefore, silent on the issue of resubmitting the name of a candidate who was rejected previously for a particular post. State statutes are also silent on the issue of resubmission. Oklahoma Senate Rules, however, deal with renomination on a limited basis.
¶ 8 The Senate prohibits confirmation after an earlier rejection for any position requiring legislative approval, but that prohibition is time-limited. Specifically, the rule provides:
 No person whose nomination has been rejected by the Senate shall be eligible to be later confirmed by the Senate during the same session for appointment to the same position. If an executive nomination is not approved during the regular session in which it is submitted, it shall be deemed rejected.[5]
S. Rule 9-2 (1999-2000) (emphasis added).
¶ 9 This rule regulates the Senate's confirmation process. The Senate may adopt rules to govern its work.[6] See Okla. Const. art. V, § 30, cl. 2.
¶ 10 In odd-numbered years, a regular session of the Legislature convenes on the first Tuesday after the first Monday in January, recesses by 5:00 p.m. that day until the first Monday in February, when it resumes, and adjourns sine die no later than 5:00 p.m. on the last Friday in May. In even-numbered years, a regular session convenes on the first Monday in February and adjourns finally by 5:00 p.m. on the last Friday in May. See
Okla. Const. art. V, § 26. Since the Senate rule prohibits confirmation of a resubmitted nomination only in the same session, the Senate could confirm a gubernatorial appointee nominated after 5:00 p.m. on the last Friday in May, even though the Oklahoma Legislature rejected the nominee between February and May of the same year.
 III. Appointment on Acting Basis A. Appointment of Rejected Nominee
¶ 11 A related question, but one you have not asked directly, is whether a person whose nomination to the Governor's Cabinet has been rejected may be appointed on an acting or interim basis. The Legislature has enacted a statute that prohibits rejected nominees from serving in an acting or interim capacity:
 A person whose nomination has been submitted to the Legislature may be appointed to hold such office on an acting or interim basis and may assume the duties of the office and receive any compensation or travel reimbursement allowed by law for the position pending confirmation by one or both houses of the Legislature. No person whose nomination has been withdrawn by the Governor or other appointing authority after the effective date of this act or rejected by one or both houses of the Legislature after the effective date of this act shall be eligible to hold such office on an acting or interim basis. Provided, such person shall be eligible for acting or interim appointment if requested by the appropriate house or houses of the Legislature.
74 O.S. 1991, § 2.2[74-2.2](B) (emphasis added).
¶ 12 Given this statute, whether a rejected candidate may hold a Cabinet position on an acting or interim basis depends on whether the position is an office. The characteristics of a public office have been enumerated by the Oklahoma Supreme Court as follows:
 (a)The specific position must be created or authorized by law; (b) there must be certain definite duties imposed by law on the incumbent; and (c) [the duties] must involve the exercise of some portion of the sovereign power[. "A] position which has these three elements is presumably an `office,' while one which lacks any of them is a mere `employment.'"
Oklahoma City v. Century Indem. Co., 62 P.2d 94, 97 (Okla. 1936) (citation omitted).
¶ 13 While specific Cabinet posts are not created by law — except the secretary of veterans affairs — the Executive Branch Reform Act of 1986 authorizes the Governor to create the positions. See 74 O.S. 1991, § 10.3[74-10.3]. The Act provides that Cabinet secretaries will perform certain functions as follows:
The Cabinet Secretaries shall:
 1. Advise the Governor of any policy changes or problems within the area they represent;
 2. Advise the entities represented of any policy changes or problems as directed by the Governor; and
 3. Coordinate information gathering for the Legislature as requested.
Id. § 10.3(B).
¶ 14 These functions are no more than giving opinions and performing clerical work. The exercise of sovereign power is different from the mere statement of opinion; it "implies command and not entreaty." In re Initiative Petition No. 364, StateQuestion No. 673, 930 P.2d 186, 194 (Okla. 1996). Sovereign power includes such things as the police power, which involves the making and enforcement of laws to protect public welfare (See Brannon v. City of Tulsa, 932 P.2d 44, 46
(Okla.Ct.App. 1996)), or eminent domain, which is the taking of property for public use (See Public Service Co. v. B. Willis, CPA, Inc.,941 P.2d 995, 997 (Okla. 1997)), or taxation (See Strelecki v.Oklahoma Tax Comm'n, 872 P.2d 910, 925 (Okla. 1993)). While the general functions that the Legislature has given Cabinet secretaries may be duties, they do not involve the exercise of any of the sovereign power of the State of Oklahoma; therefore, unless a specific Cabinet secretary has been given duties implicating sovereign power elsewhere in the statutes, Cabinet secretaries are not officers and are not subject to the prohibition in 74 O.S. 1991, § 2.2[74-2.2](B) against appointment of a rejected nominee to a Cabinet position on an acting or interim basis. See id. Whether any Cabinet secretary has been given authority to exercise sovereign power must be determined on a case-by-case basis. Any Cabinet secretary given such authority would be subject to the 74 O.S. 1991, § 2.2[74-2.2](B) prohibition. A review of the statutes shows the commerce secretary is an exofficio member of the Native American Cultural and Educational Authority of Oklahoma. See 74 O.S. Supp. 1999, § 1226.2[74-1226.2](B). This authority has the power to issue revenue bonds, see 74O.S. Supp. 1999, § 1226.4[74-1226.4](7), which involves the exercise sovereign power. The commerce secretary, therefore, would be an officer of the State of Oklahoma.
 B. Proper Paperwork for Acting Appointment
¶ 15 Your question regarding whether a nominee may serve on an acting or interim basis if the gubernatorial documents forwarding the nomination to the Senate do not expressly indicate that the nominee is to serve on that basis, was considered in Attorney General Opinion 98-22.
¶ 16 The earlier Opinion states, "[I]nterim service is not automatic; the Governor in making an appointment must affirmatively indicate, in the appointment document, that the nominee is being appointed to act on an acting or interim basis." A.G. Opin. 98-22, p. 100 (emphasis added). The Governor's letter to the Senate seeking confirmation of the appointment that gave rise to your Opinion request states:
 I hereby nominate and respectfully request that you advise and consent to the appointment of the
 Secretary of Economic Development and Special Affairs Russell Perry
. . . .
 to serve as a member of the Governor's Cabinet.
Russell Perry is to serve a term ending January 13, 2003. Russell Perry is filling a new position.
¶ 17 Letter from Frank Keating, Governor of the State of Oklahoma, to President and Members of the Honorable Senate, First Session of the Forty Sixth Legislature (May 26, 2000) (on file with author).
¶ 18 This letter does not indicate appointment on an acting or interim basis. On the other hand, the Order of Appointment filed with the Secretary of State and bearing the Secretary of State's attestation with the Great Seal of the State of Oklahoma states:
 By virtue of the authority vested in me as Governor of the State of Oklahoma, I hereby appoint as
 Secretary of Economic Development and Special Affairs Russell Perry
. . . .
 serve [sic] as a member of the Governor's Cabinet
with full membership powers and privileges on an acting interim basis as provided in Section 2.2 of Title 74 of the Oklahoma Statutes pending Senate confirmation.
¶ 19 Order of Appointment from Frank Keating, Governor of the State of Oklahoma, to the Secretary of State (May 26, 2000) (on file with Secretary of State).
¶ 20 The document filed with the Secretary of State, therefore, indicates an "acting interim" appointment as well as nomination to a permanent position.
¶ 21 The difference between the letter seeking Senate confirmation of the nomination and the Order of Appointment filed with the Secretary of State raises the question of which paper is the appropriate document that must contain the interim appointment language. The Oklahoma Constitution makes the Secretary of State the authenticator of the Governor's official acts as follows:
 The Secretary of State shall be the custodian of the Seal of the State, and authenticate therewith all official acts of the Governor except his approval of laws. The said seal shall be called "The Great Seal of the State of Oklahoma."
Okla. Const. art. VI, § 18.
¶ 22 Furthermore, the Constitution requires the Secretary of State to keep an account of the Governor's acts and to provide copies of such acts when requested:
 The Secretary of State shall keep a register of the official acts of the Governor, and when necessary, shall attest them, and shall lay copies of the same, together with copies of all papers relative thereto, before either house of the Legislature when required to do so.
Okla. Const. art. VI, § 17.
¶ 23 While Senate confirmation may be required for certainpermanent positions, the Senate does not confirm acting or interim appointments. See 74 O.S. 1991, § 2.2[74-2.2](B). In fact, the language of the statute regarding acting or interim appointments appears to indicate that a person may be appointed on an acting or interim basis some time after the permanent appointment is forwarded to the Legislature for confirmation:
 A person whose nomination has been submitted to the Legislature may be appointed to hold such office on an acting or interim basis and may assume the duties of the office and receive any compensation or travel reimbursement allowed by law for the position pending confirmation by one or both houses of the Legislature.
Id.
¶ 24 "Has been submitted" indicates action completed in the past. "May be appointed" indicates action that may occur now or in the future. This ability to appoint an acting functionary after the permanent nomination is made but awaiting confirmation, and the fact that the Senate is not required to act on the acting appointment, indicates that the letter of nomination filed with the Senate need not include a statement of acting or interim appointment.
 IV. Payment for Services A. Payment When Secretary's Position Is an Employment
¶ 25 In the instance of a Cabinet secretary who is an employee rather than an officer, we must look to employment law principles to determine whether a person who is not appointed as an acting or interim Cabinet secretary may be paid for services rendered prior to Senate confirmation.
¶ 26 If a person performs work for an employer and the parties understand that the employee will be paid for that work, a contract arises from the parties' conduct. See Jones v.University of Central Okla., 910 P.2d 987, 989 (Okla. 1995). Without reference to the Executive Branch Reform Act of 1986, the Governor has the ability to hire staff. See e.g. 1999 Okla. Sess. Laws ch. 45, § 49. The Governor, as a part of the State, has a duty to pay his hired staff at least monthly for the work they perform. See 40 O.S. 1991, § 165.2[40-165.2]. Failure to pay employees is a misdemeanor punishable by both a fine and imprisonment. See 40 O.S. Supp. 1999, § 168[40-168]. For purposes of this law requiring wage payment, an "employee" is any person "permitted to work by an employer." 40 O.S. 1991, § 165.1[40-165.1](2).
¶ 27 If the Governor mistakenly calls his employee a Cabinet secretary and receives the benefits of the employee's labors, the Governor is obligated to pay that employee the wages the parties agreed upon. Whether a particular person and the Governor had an agreement for labor is a fact question that cannot be answered by an Attorney General Opinion. See 74 O.S. Supp. 1999, §18b[74-18b](A)(5), (17).
 B. Payment When Secretary's Position Is an Office
¶ 28 As stated above, some Cabinet secretary positions may be offices. If a person serves as an acting or interim Cabinet secretary in one of these offices without benefit of the proper paperwork stating that he will serve on such a temporary basis, he or she may be a de facto officer. A de facto officer is a person:
 [W]hose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the duties and functions of the office are exercised by one who was in the actual possession of it under color of title.
City of Ardmore v. Sayre, 154 P. 356, 360 (Okla. 1915) (citation omitted).
¶ 29 A de facto officer may be paid for his performance so long as a de jure officer is not also making a claim for payment for the same position. See Carter v. Thomas,46 P.2d 460, 461 (Okla. 1935). Whether a particular person is a defacto officer entitled to payment is a fact question that cannot be determined by an Attorney General Opinion. See 74 O.S.Supp. 1999, § 18b[74-18b](A)(5), (17).
¶ 30 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Governor may not modify the executive Cabinet after the forty-five-day period established at the beginning of his or her term for the creation of the Cabinet. See 74 O.S. 1991, § 10.3[74-10.3]. The power to modify the Cabinet after this time rests with the Legislature. See id.
 2. No law prohibits the Governor from renominating a rejected Cabinet nominee. Under Senate Rule 9-2, the Senate may confirm a previously rejected nominee if the candidate's nomination is submitted after the session when the nominee was rejected. See S. Rule 9-2 (1999-2000).
 3. Interim or acting service in a government position is not automatic under 74 O.S. 1991, § 2.2(B). The Governor must state affirmatively in the appropriate document that an appointment is interim or acting. The proper document to consult to determine whether a person has been appointed by the Governor to an acting or interim position is the gubernatorial order of appointment filed with and attested by the Secretary of State. See Okla. Const. art. VI, §§ 17, 18.
 4. A rejected nominee for a position requiring Senate confirmation may serve in that position on an interim or acting basis if the post is mere employment, but may not serve in the post if it is an office, unless requested to do so by the Senate. See 74 O.S. 1991, § 2.2(B).
 5. Pursuant to 40 O.S. 1991, § 165.2, if the Governor and a member of his or her staff have an agreement that the employee will be paid for services provided, the Governor is obligated to pay for the work performed, regardless of what the employee's position is called.
 6. A person who serves on an interim or acting basis in a Cabinet secretary position that is an office, without benefit of an appointment document stating that he or she will serve on an interim or acting basis, may be a de facto officer and may be paid for such service if a de jure officer is not also making claim for payment. See Carter v. Thomas, 46 P.2d 460, 461 (Okla. 1935). Whether a particular person is a de facto officer is a question of fact that cannot be answered in an Attorney General Opinion. See 74 O.S. Supp. 1999, § 18b(A)(5), (17).
 7. The secretary of commerce, included in the Governor's Cabinet under 74 O.S. 1991, § 10.3[74-10.3] pursuant to Executive Order No. 95-8, is an officer of the State of Oklahoma because the secretary exercises some of the sovereign power of the State of Oklahoma through his statutory position on the Native American Cultural and Educational Authority of Oklahoma. See 74 O.S. Supp. 1999, §§ 1226.2, 1226.4.
 8. When the Governor attempts to create a Cabinet post outside the legislative process more than forty-five days after the Governor's term begins, the post does not exist; therefore, anyone the Governor attempts to appoint to that post is not a Cabinet secretary. Instead, the person the Governor attempted to appoint would be an employee of the Governor's office if the Governor and the person he tried to appoint had an agreement that the failed appointee would work for pay. Whether such an agreement exists is a fact question that cannot be answered by an Opinion of the Attorney General. See 74 O.S. Supp. 1999, § 18b(A)(5), (17).
 W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
 ANDREW TEVINGTON ASSISTANT ATTORNEY GENERAL
[1] Gubernatorial appointment of Cabinet secretaries must be confirmed by the Senate. See 74 O.S. 1991, § 10.3[74-10.3](B).
[2] The letter of nomination sent to the Senate is dated May 26, 2000, which was the last day of the 2000 legislative session.See Letter from Frank Keating, Governor of the State of Oklahoma, to President and Members of the Honorable Senate, First Session of the Forty Sixth Legislature (May 26, 2000) (on file with author). The Governor's office reports the nomination was made after 5:00 p.m., when the Legislature adjourned sine die.
[3] The Center for the Advancement of Science and Technology and Health Research Committee had been moved out of the commerce Cabinet area previously. See Exec. Order No. 99-27. The agencies shared by the secretary of commerce and secretary of economic development and special affairs are Oklahoma Capital Investment Board, Department of Commerce, East Central Oklahoma Building Authority, Oklahoma Firemen's Building Authority, Oklahoma Futures, Oklahoma Development Finance Authority, Oklahoma Housing Finance Authority, Oklahoma Industrial Finance Authority, Kiamichi Development Authority, Mid-South Industrial Authority, Midwestern Oklahoma Development Authority, Oklahoma Municipal Power Pool Authority Board, Oklahoma Ordnance Works Authority, Southeastern Oklahoma Industries Authority, Southern Growth Policies Board, Southern Oklahoma Development Trust, and all sub-state planning districts. Compare Exec. Order No. 95-8 and Exec. Order No. 2000-11.
[4] The Legislature has limited the salaries that may be paid twelve specifically listed Cabinet secretary positions, but that provision does not require the creation of any of the named positions. The Act merely limits compensation that may be paid Cabinet secretaries who may have these specific titles. See 74O.S. Supp. 1999, § 10.5[74-10.5].
[5] By its terms, the rule does not attempt to prohibit the Governor from renominating a candidate. The rule only limits the Senate's power to confirm a previously rejected nominee.
[6] The Senate of each Legislature must adopt its own rules. A review of previous Senate rules indicates that Senate Rule 9-2 has been adopted by each Senate since at least 1989.